Royce W. BROWN and Patty L. Brown, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 682-70.

United States Court of Appeals, Tenth Circuit.

Sept. 14, 1971.

---

Charles B. Lutz, Jr., Oklahoma City, Okl. (John K. Speck, Oklahoma City, Okl., on the brief), for appellants.

Wesley J. Filer, Atty., Tax Division, Department of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks and William Massar, Washington, D. C., on the brief), for appellee.

Before HILL, McWILLIAMS and BARRETT, Circuit Judges.

HILL, Circuit Judge.

This is an appeal from a decision of the Tax Court of the United States[1] wherein that court upheld tax deficiencies in the amount of $19,405.46 assessed against taxpayer for the taxable year 1963.

Petitioners-appellants are husband and wife. Patty L. Brown executed the 1963 joint Federal Income Tax Return involved, as wife of Royce W. Brown, but took no active part in the business involved. We will be speaking of Royce W. Brown as taxpayer hereafter. Taxpayer's original business was home building. Brown would purchase single lots from land developers and construct homes thereon. In 1957, two corporations, Royce Brown Homes, Inc. and Enchanted Homes, Inc., were chartered in Oklahoma to carry out Brown's business under the corporate form. Brown owned fifty percent of both corporations, his wife the other fifty percent. Brown's

1. 54 T.C. 1475.

interests began to shift to another field; no income from individual home sales was received after 1958. A third corporation, the Royce Brown Development Company, was chartered in Oklahoma on January 13, 1959. Brown owned ten of the thirteen shares issued. The development company was formed to purchase raw land and develop lots for sale to home builders.

The transactions giving rise to the deficiencies assessed occurred in 1958 and 1959. The first transaction involved 40 acres of land, hereinafter known as the Emmons tract, acquired on June 6, 1958. The Emmons tract was located within the corporate limits of Oklahoma City, some one-half mile from the nearest developed area in the western part of the city. Legal title was transferred to the American Title and Trust Company. The tract was to be purchased in smaller segments; as Brown paid, a deed would be issued to the particular parcel in question. Any land for which taxpayer did not pay was to be returned to the seller. Taxpayer assigned his interest in the Emmons tract to the Royce Brown Development Company on January 19, 1959.

The second transaction involved some 108 acres of land known as the Anderson tract, acquired on December 18, 1958. The Anderson land was outside the corporate limits of Oklahoma City, and near the municipality of Bethany, Oklahoma. A trust deed was again executed in favor of American; as before, title was transferred to Brown as the various segments of the tract were paid. On September 1, 1959, taxpayer assigned his interest in the Anderson tract to the Royce Brown Development Company.

Taxpayer received notes from the Royce Brown Development Company for transfer of his interest in the Emmons and Anderson tracts. Payment on the notes was received in 1963; taxpayer reported the amount on his 1963 Federal Income Tax Return as a capital gain. The Commissioner of Internal Revenue determined the amount to be ordinary income, and assessed the deficiency. The issue is whether the amount represents gain from the sale of a capital asset, or gain from the sale of property held by taxpayer primarily for sale to customers in the ordinary course of his trade or business.

Ordinary income is distinguished from a capital asset as follows: [2]

For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

This distinction is perhaps more comprehensible when the purpose of the capital gains designation is called to mind. The capital gains provisions of the Internal Revenue Code are intended by Congress to alleviate the burden on a taxpayer whose property has increased in value over a long period of time. Investment property is to be distinguished from stock in trade, or property bought and sold for a profit. Wiseman v. Halliburton Oil Well Cementing Company, 301 F.2d 654 (10th Cir. 1962).

■■ The dichotomy between investment property and property held primarily for sale to customers in the ordinary course of taxpayer's trade or business is essentially a question of fact. Commissioner of Internal Revenue v. Tri-S Corp., 400 F.2d 862 (10th Cir. 1968). The totality of circumstances is of course controlling in each case. Relevant factors include the purpose for which the property was acquired, the activities of the taxpayer and those acting in his behalf or under his direction, such as making improvements or adver-

---

2. Int.Rev.Code of 1954, § 1221.

tising, the continuity and frequency of sales as distinguished from isolated transactions, and any other fact which tends to indicate whether the sale or transaction was in furtherance of an occupation of the taxpayer. Friend v. Commissioner of Internal Revenue, 198 F.2d 285 (10th Cir. 1952). It is the function of the Tax Court of the United States to make such findings of fact. The findings of the Tax Court will not be overturned by the United States Court of Appeals unless unsupported by substantial evidence and clearly wrong. House Beautiful Homes, Inc. v. Commissioner of Internal Revenue, 405 F.2d 61 (10th Cir. 1968). He who challenges the Tax Court's findings has the burden to show affirmatively that such findings are not supported by substantial evidence and are clearly wrong. Bowyer v. Commissioner of Internal Revenue, 287 F.2d 787 (10th Cir. 1961).

This Court is unable to conclude that the findings of the Tax Court are not supported by substantial evidence or are clearly erroneous. A close reading of the record reveals that taxpayer Brown was engaged in developing the land in question primarily for sale to customers. The transaction involving the Emmons property was concluded on June 6, 1958. In December, 1958, Brown contacted the Hughes Engineering Company to find where streets and utilities would be located. The land was platted, and approved by the Oklahoma City Planning Commission on January 8, 1959. Brown did not assign his interest in the Emmons tract to the Royce Brown Development Company until January 19, 1959.

The transaction involving the Anderson tract was concluded on December 18, 1958. This land was annexed by the City of Bethany, Oklahoma, some months thereafter. Certain topographical features of this land rendered installation of a sewer system difficult. Taxpayer's attorney, who was also attorney for the City of Bethany, was active in establishing a means by which the City of Bethany could construct a sewer system in the area. Toward this end, the Bethany Public Works Authority was formed on March 17, 1959. Taxpayer assigned his interest in the Anderson tract to the Royce Brown Development Company on September 1, 1959. A feasibility study on installation of a sewer system on the Anderson tract was begun in October, 1959. Subsequently, a system was constructed, and the land was subdivided.

Additional facts must be kept in mind in evaluating taxpayer's activities with regard to the Emmons and Anderson tracts. Taxpayer received no income from the sale of individual homes after 1958. He received compensation for his executive duties from his two home building corporations, and later from the development company. During the period in question, taxpayer made other purchases of undeveloped land. In 1958, the Heckart tract was purchased by taxpayer, in conjunction with his brother, Don Brown. The property was developed in 1960 under contract with the Western Oaks Development Company. In March and April, 1959, the Braniger and McManus tracts were purchased. This land, together with the Lynn tract added in 1962, was developed as the Riviera Addition by taxpayer in 1963. Although these transactions do not affirmatively establish that the land in question was held primarily for sale to customers, they do go to the establishment of the nature of taxpayer's trade or business during the period in question.

It is a reasonable inference from the above discussed facts that taxpayer acquired the Emmons and Anderson tracts primarily for sale to customers. The circumstances indicate a concerted effort on the part of Brown to develop the property, thus preparing it for resale to customers. The inferences drawn by the Tax Court will not now be overturned on review. Bowyer v. Commissioner of Internal Revenue, supra.

This court is not persuaded by the cases cited by petitioner-appellant. Brown relies heavily on Gordy v. Commissioner, 36 T.C. 855 (Aug. 17, 1961) and Robert E. and Valretta Ronhovde, 36

P–H Tax Ct.Memo. 1373 (1967). A close reading of these cases reveals analogous fact situations, with one significant difference. In neither situation did taxpayer make any personal efforts to plat or subdivide in general. In the instant case, taxpayer held his interest in his own name for a certain amount of time after each transaction, and made personal efforts at platting and other necessary prerequisites of subdivision.

 Lack of *personal* efforts at preparing property for resale in no way raises an implication that capital gains treatment can be secured by doing so through a closely held corporation. Petitioner-appellant correctly argues that a taxpayer can arrange his affairs to his best tax advantage.[3] The business of a corporation will not ordinarily be attributed to a taxpayer.[4] Although being an officer in a family corporation may give rise to close scrutiny, this is not reason to attribute the corporate business to taxpayer.[5] Yet cases abound supporting the proposition that taxpayer may not conduct his business through a closely controlled corporation, and secure capital gains treatment on the profits derived therefrom. The United States Supreme Court has been adamant in supporting the proposition that [t]axation is not so much concerned with the refinements of title as it is with actual command over the property taxed * * and it makes no difference that such command may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency.[6] Gain realized from an interest in land transferred to a closely held corporation, which in turn disposes of that interest to the ultimate purchaser, has been held ordinary income by the United States courts.[7]

This Court is unwilling to pass on the question of the nature of taxpayer's interest in the land in question. Whether the interest was an option or equitable title is not controlling, and thus need not be answered. It is sufficient to say that taxpayer had substantial control over the land in question, enough to support a taxable interest. Taxpayer's business became purchasing land for development and sale to customers at some point in 1958. Profits from transactions carried out in furtherance of this purpose are taxable as ordinary income.

Affirmed.

3. Helvering v. Gregory, 69 F.2d 809 (2d Cir. 1934), aff'd 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596.

4. Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397 (1932).

5. William H. Davis, 38 P–H Tax Ct. Memo. 1265 (1969).

6. Griffiths v. Helvering, 308 U.S. 355, at 357–358, 60 S.Ct. 277, at 278, 84 L.Ed. 319 (1940).

7. *See* Burgher v. Campbell, 244 F.2d 863 (5th Cir. 1957); Tibbals v. United States, 362 F.2d 266, 176 Ct.Cl. 196 (1966); Browne v. United States, 356 F.2d 546, 174 Ct.Cl. 523 (1966).