**John D. and Sally A. BYRAM, Plaintiffs-Appellees Cross-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellant Cross-Appellee.**

No. 81–1582.

United States Court of Appeals, Fifth Circuit.

May 31, 1983.

---

Robert D. Martinez, Atty., Tax Div., Dept. of Justice, Dallas, Tex., Edward C. Prado, U.S. Atty., Hugh P. Shovlin, Asst. U.S. Atty., San Antonio, Tex., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, Richard Farber, Frank P. Cihlar, Gary R. Allen, Attys., Tax Div., Dept. of Justice, Washington, D.C., for the U.S.

Clark, Thomas, Winters & Shapiro, Michael L. Cook, Donald L. Reese, Austin, Tex., for John D. and Sally Byram.

Before WISDOM, GEE and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

*"If a client asks you in any but an extreme case whether, in your opinion, his sale will result in capital gain, your answer should probably be, 'I don't know, and no one else in town can tell you.'"* [1]

Sadly, the above wry comment on federal taxation of real estate transfers has, in the twenty-five years or so since it was penned, passed from the status of half-serious aside to that of hackneyed truism. Hackneyed or not, it is the primary attribute of truisms to be true, and this one is: in that field of the law—real property tenure—where the stability of rule and precedent has been exalted above all others, it seems ironic that one of its attributes, the tax incident upon disposition of such property, should be one of the most uncertain in the entire field of litigation. But so it is, and we are called on again today to decide a close case in which almost a million dollars in claimed refunds

---

1. Comment, *Capital Gains: Dealer and Investor Problems*, 35 Taxes 804, 806 (1957) *quoted in* 3B Mertens, Law of Federal Income Taxation § 22.138 n. 69 (Zimet & Weiss rev. 1958); *Biedenharn Realty Co. v. United States*, 509 F.2d 171, 175 (5th Cir.1975), *rev'd en banc*, 526 F.2d 409 (5th Cir.), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976); *Thompson v. Commissioner*, 322 F.2d 122, 123 n. 2 (5th Cir. 1963); *Cole v. Usry*, 294 F.2d 426, 427 n. 3 (5th Cir.1961).

are at stake. Doing so requires us to survey the development of this law in our circuit and to consider what application here, if any, the recent decision in *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), is to find.

## FACTS

The trial court, sitting without a jury in this taxpayer's suit for refund, found the following facts:

During 1973, John D. Byram, the taxpayer, sold seven pieces of real property.[2] Mr. Byram was not a licensed real estate broker, was not associated with a real estate company which advertised itself, and did not maintain a separate real estate office. He advertised none of the seven properties for sale, nor did he list any of them with real estate brokers. To the contrary, all of the transactions were initiated either by the purchaser or by someone acting in the purchaser's behalf.

None of the properties sold was platted or subdivided. Byram devoted minimal time and effort to the sales in question, occupying himself chiefly with his rental properties. Byram's income for 1972 and 1973 included substantial amounts of rental income and interest income.

The district court's findings do not reflect the following additional facts, which apparently are not disputed by the parties. From 1971 through 1973, Byram sold 22 parcels of real property for a total gross return of over $9 million and a net profit of approximately $3.4 million. The seven properties at issue in this case sold for approximately $6.6 million gross, resulting in a profit of approximately $2.5 million. Six of the seven properties were held by Byram for periods ranging from six to nine months, intervals just exceeding the then-applicable holding periods for long-term capital gains. The seventh property had been held for two years and six months.

Although, as noted above, Mr. Byram received substantial rent and interest income

in 1973, nevertheless his rental activities for that year resulted in a net tax loss of approximately $186,000. He received rental income from only one of the seven properties sold in 1973. The record does not reflect the exact relative amounts of income attributable to the sales in question and Byram's other activities.

Certain facts are disputed by the parties. The government asserts in its brief that Byram had entered into contracts to sell at least three of the seven properties in issue before he actually acquired them. Byram first responds that the record reflects only two such instances, not three; and at oral argument the government appeared to concede the point. As to those two transactions, Byram asserts that he acquired the right to purchase the properties by executing a contract before he entered into a contract to sell them; it was only closing on the purchases that postdated his contracts to sell. Finally, the government asserts, and Byram denies, that by virtue of Byram's civic activities in Austin, Texas, Byram's business of selling real estate was well-known in the community.

Based on its subsidiary findings indicated, the district court made ultimate findings that Byram held each of the seven properties for investment purposes and not primarily for sale to customers in the ordinary course of his trade or business. Judgment was therefore entered granting Byram the capital gains treatment that he sought. The government brought this appeal.

In a 1972 transaction unrelated to his real estate sales, Byram sought construction financing for an apartment and office building. Because there was a possibility that the interest rate required by the lenders would violate Texas usury laws if Byram borrowed the money individually, he formed a wholly-owned corporation, Byram Properties, Inc. (the "corporation"), to obtain financing by executing certain notes. This was the corporation's only function. The corporation was the principal obligor; Byram personally guaranteed payment of

**2.** Sally A. Byram is a party in this case only because joint returns were filed for the years in question. Therefore, our references to the "taxpayer" or "Byram" are to John D. Byram.

the notes and in fact made the payments. Byram deducted the interest component of these payments on his 1972 and 1973 tax returns. The Internal Revenue Service disallowed the deductions, the district court upheld its action, and Byram cross-appealed.

## I.

■ Profits derived from the sale of "capital assets," known as "capital gains," are entitled to favorable tax treatment under the Internal Revenue Code (the "Code"). *See* 26 U.S.C. §§ 1201, 1202. The term "capital asset" is defined in relevant part as "property held by the taxpayer," not including property held "primarily for sale to customers in the ordinary course of [the taxpayer's] trade or business." *Id.,* § 1221. The district court found that Byram "was not engaged in the real estate business" during the relevant years and that each of the seven properties in issue was held "for investment purposes and not

primarily for sale to customers in the ordinary course of [Byram's] trade or business." Accordingly, the district court held that Byram was entitled to treat the profits from his 1973 sales as capital gains and ordered an appropriate refund. Our first task is to decide the correct standard by which to review the district court's principal finding[3] that Byram's holding purpose was for investment rather than for sale. The choice of a standard will determine the outcome of many cases; if the issue is treated as factual, the district court's decision is final unless clearly erroneous, F.R.C.P. 52(a), but if a question of law is presented, we may decide it *de novo.*

The question whether the characterization of property as "primarily held for sale to customers in the ordinary course of [a taxpayer's] trade or business" is an issue of fact or one of law has engendered tremendous controversy and conflict both in this[4] and in other[5] circuits. Recognizing the

---

**3.** In *Suburban Realty Co. v. United States,* 615 F.2d 171 (5th Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 318, 66 L.Ed.2d 147 (1980), we recognized that the Code definition of "capital asset" gives rise to at least three inquiries:

(1) was taxpayer engaged in a trade or business, and, if so, what business?
(2) was taxpayer holding the property primarily for sale in that business?
(3) were the sales contemplated by taxpayer "ordinary" in the course of that business?

*Id.* at 178 (footnote omitted).

In many situations, these questions are analytically independent. For example, it will oftentimes be beyond dispute that a taxpayer is engaged in the real estate business with respect to certain properties, yet *other properties* may not be held primarily for sale in that business, or *particular sales* may be outside its ordinary scope. *See, e.g., Wood v. Commissioner,* 276 F.2d 586 (5th Cir.1960); *Maddux Construction Co. v. Commissioner,* 54 T.C. 1278 (1970). However, in the present case the three statutory questions tend to merge into one, because the existence of a business, Byram's holding purpose, and the "ordinariness" of sales must all be determined by characterization of the same transactions. Moreover, because we decide below that Byram's holding purpose must be treated as an issue of fact, and that the district court's finding is not clearly erroneous, the holding below must be left undisturbed and we need not address related questions arguably posed by the statute.

**4.** *See Suburban Realty,* 615 F.2d at 180, collecting cases treating the issue as one of law, *e.g., Houston Endowment, Inc. v. United States,* 606 F.2d 77, 83 (5th Cir.1979); *United States v. Winthrop,* 417 F.2d 905, 910 (5th Cir.1969); *Galena Oaks Corp. v. Scofield,* 218 F.2d 217 (5th Cir.1954); and another line of cases treating the question as essentially factual, *e.g., United States v. Burket,* 402 F.2d 426, 429 (5th Cir.1968); *Thompson v. Commissioner,* 322 F.2d 122, 127 (5th Cir.1963).

**5.** Three other circuit courts of appeals treat the issue as one of fact. *Philhall Corp. v. United States,* 546 F.2d 210 (6th Cir.1976); *Brown v. Commissioner,* 448 F.2d 514 (10th Cir.1971); *Municipal Bond Corp. v. Commissioner,* 382 F.2d 184 (8th Cir.1967). Two circuits treat it as a question of law, following our cases that so hold. *Turner v. Commissioner,* 540 F.2d 1249 (4th Cir.1976); *Jersey Land & Development Corp. v. United States,* 539 F.2d 311 (3d Cir. 1976). In other circuits, the issue is apparently unsettled. *Compare Sovereign v. Commissioner,* 281 F.2d 830 (7th Cir.1960) (fact question) *with Hansche v. Commissioner,* 457 F.2d 429 (7th Cir.1972) (treats question as open); *compare Estate of Segel v. Commissioner,* 370 F.2d 107 (2d Cir.1966) (applies clearly erroneous standard) *with In re Joseph Kanner Hat Co.,* 482 F.2d 937 (2d Cir.1973) (bankruptcy case; dicta that de novo review applies). *See also Cruttenden v. Commissioner,* 644 F.2d 1368 (9th Cir.1981) (open question); *Parkside, Inc. v.*

conflict in our own cases, a panel recently attempted to resolve it by breaking the statutory test down into its component parts, *see* note 3, *supra,* some of which we held "are predominantly legal conclusions or are 'mixed questions of fact and law,' whereas others are essentially questions of fact." *Suburban Realty,* 615 F.2d at 180 (footnote omitted). As we shall see, it must now be admitted that, because we were forced to struggle with this circuit's long-standing distinction between "subsidiary facts" and "ultimate facts," this attempt to clarify the law was not entirely successful.

The ultimate fact doctrine, first embraced by our court in *Galena Oaks Corp. v. Scofield,* 218 F.2d 217 (5th Cir.1954), posits that review of ultimate facts is not constrained by the clearly erroneous rule since though factual in nature, these issues are also the ultimate ones for resolution in a case and must be determined by a process of legal reasoning from subsidiary facts. *Id.* at 219–20. Accordingly, in *Suburban Realty* we observed that a taxpayer's holding purpose is "primarily factual," but that it is not a "pure" question of fact. 615 F.2d at 180–81 and n. 27. Though we stated that a lower court's finding of holding purpose must be followed unless clearly erroneous, *id.* at 185 n. 41, we also maintained that our review of the "ultimate conclusion" in such cases is plenary. *Id.* at 181 n. 28. Thus, although *Suburban Realty* purported to clarify our role in capital gains cases, the actual dynamics of appellate review remained unclear.

Fortunately, it is unnecessary once again to traverse the conceptual thicket of ultimate and subsidiary facts so carefully husbanded by this court through the years. The Supreme Court has levelled it. *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

In *Swint,* the Court reviewed a decision of this court holding that by setting up and perpetuating a particular seniority system, an employer and two unions had discriminated against black employees in violation of Title VII of the Civil Rights Act. 42 U.S.C. § 2000e–2(h). In order to establish discrimination in the operation of a seniority system, it is necessary to prove discriminatory intent. *Id.; Swint,* 456 U.S. at 275–277, 102 S.Ct. at 1783–1784, 72 L.Ed.2d at 72–73. Analyzing the issue in the manner suggested by this court,[6] the district court found that the seniority system did not result from an intention to discriminate. Treating the issue of discriminatory purpose as one of ultimate fact, this court independently reviewed the record and made its own finding of discrimination.

■ Reversing that decision and rejecting our authorities on which it rested, the Supreme Court held that our accepted rule allowing *de novo* review of ultimate facts[7] is incompatible with the dictates of Rule 52, Federal Rules of Civil Procedure. 456 U.S. at 285–287, 102 S.Ct. at 1788–1789, 72 L.Ed.2d at 78–79. The Court emphasized that Rule 52 "broadly requires" that findings of fact be accepted unless clearly erroneous, and that it does not divide findings of fact into categories. *Id.*

The Court recognized the "vexing nature of the distinction between questions of fact and questions of law," and noted that Rule 52 provides little guidance in drawing the

---

*Commissioner,* 571 F.2d 1092, 1095 n. 5 (9th Cir.1977) (only one panel member accepts position that issue is one of fact).

**6.** In *James v. Stockham Valves & Fittings Co.,* 559 F.2d 310 (5th Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978), we identified four factors that the Supreme Court has focused on in examining the issue of discriminatory purpose. *Id.* at 352; *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 355–56, 97 S.Ct. 1843, 1864–1865, 52 L.Ed.2d 396 (1977). At the same time, we emphasized that "the totality of the circumstances in the development and maintenance of the system is relevant to examining that issue." 559 F.2d at 352.

**7.** The Court traced the history of the ultimate fact doctrine in our circuit from its inception in *Galena Oaks Corp. v. Scofield, supra,* a case dealing, like that before us, with holding purpose in the capital gains context, through application of the doctrine in Title VII cases to the issue of discriminatory purpose. 456 U.S. at 286–287 n. 16, 102 S.Ct. at 1788–1789 n. 16, 72 L.Ed.2d at 78–79 n. 16.

line. *Id.* 456 U.S. at 287, 102 S.Ct. at 1789, 72 L.Ed.2d at 79. Indeed, the ultimate fact doctrine itself probably can be understood best as an abortive attempt to resolve the law/fact dilemma by making that elusive distinction less determinative.[8] Elusive or not, *Swint* tells us that it is a distinction Rule 52 requires us to draw.

█ Though the characterization of issues as ones of law or fact may be difficult in some cases, the present case is not one of them. The issue of holding purpose under the Code, like the issue of discriminatory purpose under Title VII, is a pure question of fact. That this is so was made clear by the Court in *Swint:*

> Treating issues of intent as factual matters for the trier of fact is commonplace. In *Dayton Board of Education v. Brinkman,* 443 U.S. 526, 534, 61 L.Ed.2d 720, 99 S.Ct. 2971 [2977] (1979), the principal question was whether the defendants had intentionally maintained a racially segregated school system at a specified time in the past. We recognized that issue as essentially factual, subject to the clearly erroneous rule. In *Comm'r v. Duberstein,* 363 U.S. 278, 4 L.Ed.2d 1218, 80 S.Ct. 1190 (1960), the Court held that the principal criterion for identifying a gift under the applicable provision of the Internal Revenue Code was the intent or motive of the donor—"one that inquires what the basic reason for his conduct was in fact." 363 U.S., at 286, 4 L.Ed.2d 1218, 80 S.Ct. 1190 [at 1197]. Resolution of that issue determined the ultimate issue of whether a gift had been made. Both issues were held to be questions of fact subject to the clearly erroneous rule. In *United States v. Yellow Cab,* 338 U.S. 338, 341, 94 L.Ed. 150, 70 S.Ct. 177 [179] (1949), an antitrust case, the Court referred to "findings as to the design, motive and intent with which men act" as peculiarly factual issues for the trier of fact and therefore subject to appellate review under Rule 52.

*Swint,* 456 U.S. at 287–288, 102 S.Ct. at 1789–1790, 72 L.Ed.2d at 79–80.

█ The purpose for holding property, like the purpose for maintaining a seniority system at issue in *Swint,* is a question of intent and motive.[9] As such, it is a question of pure fact, and is neither a question of law nor a mixed question of law and fact. *See* 456 U.S. at 287, 102 S.Ct. at 1789, 72 L.Ed.2d at 79. The factors usually cited to justify plenary review of holding purpose are the same factors that the Court found unpersuasive in determining the proper standard of review in *Swint.* For example, both issues involve a consideration of all facts and circumstances, with emphasis on particular significant factors. *Compare James v. Stockham Valves & Fittings Co., supra* note 6 (relevant considerations under Title VII) *with Suburban Realty,* 615 F.2d at 176, 182–85 (factors relevant to holding purpose under the Code). Similarly, both issues require the district court to use a reasoning process in analyzing the facts and to apply certain legal standards in making its finding. *See* note 9, *supra.* Resolution of either issue can determine the outcome of a case. None of those considerations affected the *Swint* Court's conclusion that the issue of discriminatory intent is neither a question of law nor a mixed question of law and fact, but is a pure question of fact. We see no reason to subject a district court's determination of holding purpose to a different standard of review than that applied to a district court's finding of discriminatory intent. The district court's

---

8. *See Baumgartner v. United States,* 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944); *see also Swint,* 456 U.S. at 286–287 n. 16, 102 S.Ct. at 1788–1789 n. 16, 72 L.Ed.2d at 78–79 n. 16.

9. We have uniformly held that the statutory exception for property "held" for sale to customers, 26 U.S.C. § 1221, requires an inquiry into a taxpayer's intent. *See, e.g., Suburban Realty,* 615 F.2d at 182–85; *Biedenharn Realty Co. v. United States,* 526 F.2d 409, 422–23 (5th Cir.) (en banc), *cert. denied,* 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976). Moreover, the fact that the taxpayer's subjective state of mind is not controlling and an objective inquiry must be made by the court does not render the issue any less one of intent or any less factual. *See Commissioner v. Duberstein,* 363 U.S. 278, 286, 290–91, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218, 1225, 1228 (1960).

finding in the present case that Byram held his property for investment rather than for sale to customers in the ordinary course of his business must be accepted unless it is clearly erroneous.

The record and the district court's findings of fact indicate that in determining Byram's holding purpose, the court considered all the factors this court has called "the seven pillars of capital gains treatment":[10]

> (1) the nature and purpose of the acquisition of the property and the duration of the ownership; (2) the extent and nature of the taxpayer's efforts to sell the property; (3) the number, extent, continuity and substantiality of the sales; (4) the extent of subdividing, developing, and advertising to increase sales; (5) the use of a business office for the sale of the property; (6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; and (7) the time and effort the taxpayer habitually devoted to the sales.

*United States v. Winthrop,* 417 F.2d 905, 910 (5th Cir.1969). Recent cases have placed particular emphasis on four of these factors, noting that frequency and substantiality of sales is the most important factor, and that improvements to the property, solicitation and advertising efforts, and brokerage activities are also especially relevant considerations. *Biedenharn Realty,* 526 F.2d at 415–16; *Suburban Realty,* 615 F.2d at 176. At the same time, it has been repeatedly emphasized that these factors should not be treated as talismans. *Winthrop,* 417 F.2d at 911. Rather, "each case must be decided on its own peculiar facts. . . . Specific factors, or combinations of them, are not necessarily controlling." *Biedenharn Realty,* 526 F.2d at 415 (quoting *Thompson v. Commissioner,* 322 F.2d 122, 127 (5th Cir.1963)).

The district court found most of the *Winthrop* factors absent in Byram's case. Byram made no personal effort to initiate the sales; buyers came to him. He did not advertise, he did not have a sales office, nor did he enlist the aid of brokers. The properties at issue were not improved or developed by him. The district court found that Byram devoted minimal time and effort to the transactions.[11] The government does not contend that any of these findings are clearly erroneous. Rather, the government argues that the frequency and substantiality of Byram's sales, together with the relatively short duration of his ownership of most of the properties, establishes that Byram intended to hold the properties for sale in the ordinary course of his business. In light of our decision regarding the standard of review, the government's argument must be that the district court clearly erred in finding these factors outweighed by the other relevant evidence. We cannot reasonably say that the district court's finding that Byram held his properties for investment was clearly erroneous.

---

10. In application, these "pillars" have come more nearly to resemble the walls of a maze. *See, e.g., Suburban Realty,* 615 F.2d 171; *Biedenharn Realty,* 526 F.2d 409.

11. This factor has been slighted in recent cases, not because it is unimportant, but because it was irrelevant to our consideration of the activities of large corporate organizations. *See e.g. Suburban Realty,* 615 F.2d 171; *Houston Endowment,* 606 F.2d 77; *Biedenharn Realty,* 526 F.2d 409. However, in a case like the present one, where the government seeks to show that an individual taxpayer is holding property for sale in a certain business, the quantum of that individual's activity becomes very relevant. Long before the proliferation of tests and factors engulfed the capital gains field, this court made the common sense observation that the word "business" means "busyness; it implies that one is kept more or less busy, that the activity is an occupation." *Snell v. Commissioner,* 97 F.2d 891, 892 (5th Cir.1938); *see also Stern v. United States,* 164 F.Supp. 847, 851 (E.D.La.1958) ("[A] court should not be quick to put a man in business . . . simply because he has been successful in earning extra income through a hobby or some other endeavor which takes relatively small part of his time.") *aff'd* 262 F.2d 957 (5th Cir.), *cert. denied,* 359 U.S. 969, 79 S.Ct. 880, 3 L.Ed.2d 836 (1959). The district court was entitled to give great weight to Byram's time and effort devoted to sales in determining whether he held his property for sale in the ordinary course of his business.

The record reveals that during a three-year period, Byram sold 22 parcels of real estate for over $9 million, netting approximately $3.4 million profit.[12] Though these amounts are substantial by anyone's yardstick, the district court did not clearly err in determining that 22 such sales in three years were not sufficiently frequent or continuous to compel an inference of intent to hold the property for sale rather than investment. *Compare Suburban Realty,* 615 F.2d at 174 (244 sales over 32-year period); *Biedenharn Realty,* 526 F.2d at 411–12 (during 31-year period, taxpayer sold 208 lots and twelve individual parcels from subdivision in question; 477 lots were sold from other properties). This is particularly true in a case where the other relevant factors weigh so heavily in favor of the taxpayer. "[S]ubstantial and frequent sales activity, standing alone, has never been held to be automatically sufficient to trigger ordinary income treatment." *Suburban Realty,* 615 F.2d at 176. Moreover, Byram's relatively short holding periods for some of the properties do not tip the balance in favor of the government. Ranging from six to nine months, these periods exceeded the then-applicable threshold for long-term capital gain treatment. In establishing those thresholds, Congress clearly expressed its intent that sales of otherwise qualified capital assets held for six to nine months be accorded capital gains treatment. To avoid frustration of that intent, a court should avoid placing too much weight on duration of ownership where other indicia of intent to hold the property for sale are minimal.[13]

Mr. Byram has presented us with a close case. Had we been called upon to try or retry the facts, perhaps we would have drawn different inferences than did the district court. However, *Swint* has relieved us of that duty. Our review of the evidence convinces us that the district court was not clearly erroneous in finding that Byram held his properties for investment and not for sale in the ordinary course of his trade or business.

## II.

Byram's sole argument on his cross-appeal is that Treas.Reg. § 1.163–1(b) entitles him to deduct personally the interest he paid on behalf of his corporation.[14] That regulation provides in part that "[i]nterest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness."

Byram's contention is that his corporation held only bare legal title to the apartment and office building as a financing device and that he is the equitable owner of the property entitled to interest deductions under the regulation. We considered and rejected this argument in *Abdalla v. Commissioner,* 647 F.2d 487, 503–04 (5th Cir.1981).

It long has been settled in our circuit that a taxpayer is entitled to deduct interest

12. Although only the seven sales completed in 1973 are at issue in this case, prior years' activities are relevant to the characterization of the 1973 transactions. *See Thompson v. Commissioner,* 322 F.2d 122, 127 (5th Cir.1963).

13. A variation of the argument based on short holding periods is that Byram's execution of contracts to sell two properties before acquiring title to them indicates lack of investment intent. The record shows that Byram contracted to purchase one of the properties and a portion of the other before engaging to sell them. *See* Record, Volume IV, p. 304–07, 310; Plaintiffs' Exhibits 15, 19, & 20. For these, the timing of passage of title is irrelevant for our purposes. Even if we assume that Byram contracted to sell the remaining portion of property before acquiring it, our view of the district

court's finding remains unaltered. Though this fact undoubtedly favors the government's position, the district court reasonably could have found it outweighed by the other evidence.

14. The district court found that the corporation was not a sham, that it was formed for the valid business purpose of avoiding state usury laws, and that it therefore could not be disregarded as a separate taxable entity. The district court also found that the corporation did not function as Byram's agent. *See Roccaforte v. Commissioner,* 77 T.C. 263 (1981), *appeal filed* No. 82–4048 (5th Cir. Feb. 4, 1982). Relying entirely on the indicated regulation, Byram does not dispute these findings, and we do not review them.

payments only on his own indebtedness. *Id.* at 503 (collecting cases); *Nelson v. Commissioner,* 281 F.2d 1, 5 (5th Cir.1960). Consistent with this principle, we held in *Abdalla* that Treas.Reg. § 1.163–1(b) "does nothing more than to permit the deduction of interest in situations where the taxpayer-borrower is not personally liable on a mortgage of property that is used as a security for a *loan to the taxpayer.*" 647 F.2d at 504 (emphasis original); *accord Golder v. Commissioner,* 604 F.2d 34 (9th Cir.1979); *Crouch v. United States,* 509 F.Supp. 727, 732–34 (D.Kan.1981), *aff'd* 692 F.2d 97 (10th Cir.1982); *Hynes v. Commissioner,* 74 T.C. 1266, 1288 (1980). In this case, as in *Abdalla,* the loan was made to the corporation, not to Byram. The district court correctly held that he was not entitled to deduct the interest payments.

The judgment of the district court is AFFIRMED.