United States Court of Appeals,

Fifth Circuit.

No. 91–4145.

Richard H. and Patsy J. BRAMBLETT, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

May 13, 1992.

Appeal from a Decision of the United States Tax Court.

Before JOLLY, JONES, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This tax appeal arises out of a series of transactions entered into by a partnership and a related corporation. The partnership, Mesquite East, and the corporation, Town East, are owned by the same four people, and each person has the same ownership interest in the corporation as he does in the partnership. Mesquite East bought several parcels of land for the stated purpose of investment. It then sold almost all of this land to Town East, which developed it and sold it to various third parties. Mesquite East reported the income from the sale of land at issue as capital gain, arguing that it held the land as a capital asset. The commissioner asserted a deficiency against one of the partners for his distributive share of the profit, arguing that the profit should be taxed as ordinary income, because in the light of the activities of Town East and their relationship to Mesquite East, Mesquite East was really in the business of selling land. The tax court affirmed the deficiency, holding that the totality of circumstances supported the conclusion that Mesquite East was in the business of selling land.

We hold that Mesquite East was not directly in the business of selling land, that Town East was not the agent of Mesquite East, and that the activities of Town East cannot be attributed to Mesquite East. Thus, Mesquite did hold the land as a capital asset and is entitled to capital gains treatment. Therefore, we reverse the decision of the tax court.

I

On May 16, 1979, William Baker, Richard Bramblett, Robert Walker, and John Sexton formed the Mesquite East Joint Venture. Baker, Bramblett, Walker, and Sexton had respective 50%, 22%, 18%, and 10% interests in the joint venture. The stated purpose of the joint venture was to acquire vacant land for investment purposes. On June 4, 1979, the same four individuals formed Town East Development Company, a Texas corporation, for the purpose of developing and selling real estate in the Mesquite, Texas area. The shareholders' interests in Town East mirrored their interests in Mesquite East.

In late 1979 and early 1980, Mesquite East acquired 180.06 acres of land from Bramco, a corporation of which Bramblett was the sole shareholder. Also, in late 1979, Mesquite East acquired 84.5 acres of land from an unrelated third party, bringing its acquisitions to a total of 264.56 acres. Subsequent to its acquisition of the property and prior to the sale at issue here, Mesquite East made four separate sales of its acquired land. In three of the four instances, Mesquite East initially sold the property to Town East, which then developed it and sold it to third parties. In each of these instances, prior to the time Town East purchased the property from Mesquite East, it already had a binding sales agreement with the third party. In the fourth transaction, Mesquite East sold property directly to Langston/R & B Financial Joint Venture No. 1. Mesquite East's gross profit on these four transactions was $68,394.80 and it reported this amount as ordinary income on its 1981 partnership tax return.

Following these transactions, Town East still owned 121 acres. In 1982, Baker, acting as trustee, entered into five contingent contracts of sale for portions of this property. Mesquite East consulted its attorneys and accountants seeking advice on how to structure the transactions to avoid ordinary income tax on the sale. In December 1982, Mesquite East sold the property to Town East in exchange for two promissory notes totaling $9,830,000.00, the amount an appraiser determined to be the fair market value of the land. The notes provided for an interest rate of twelve percent per

annum on the unpaid balance and an annual principle payment of $1.5 million. Town East proceeded to develop the property and sold most of it to unrelated third parties in eight different transactions. Town East made no payments on the notes until after the property had been sold to third parties. Town East paid the entire principal amount by the end of 1984, but it did not make the required interest payments.

Mesquite East characterized its profits from this sale as long-term capital gain on its 1983 and 1984 partnership tax returns. On audit, the Commissioner of Internal Revenue determined that the profits constituted ordinary income and asserted deficiencies in income tax attributable to the taxpayers' distributive share of the gain realized on the sale.

## II

The Brambletts petitioned the tax court for a redetermination of the asserted deficiencies. The tax court upheld the deficiencies, finding that the sale of land was the business of Mesquite East, and that, therefore, the profits were ordinary income. The tax court stated that this was true whether the business was conducted directly or through Town East. The tax court noted that the businessmen were owners in proportionate shares of the joint venture and the corporation, that the corporation was formed less than a month after the joint venture, that the corporation routinely entered into contracts of sale to third parties before buying the property from the joint venture, that the corporation made no payments to the joint venture until funds were received from third parties, that the corporation did not make the required interest payments and that the corporation only developed land that it bought from the joint venture. The court further stated that its opinion was consistent with *Moline Properties, Inc. v. Commissioner,* 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943), because the joint venture and the corporation were treated as separate entities for tax purposes; sales of the property by the corporation were taxed to the corporation and sales of the property by the partnership were taxed to the partnership. The tax court recognized that whether the corporation was an agent of the partnership must be determined by the standards set forth in *Commissioner v.*

*Bollinger,* 485 U.S. 340, 108 S.Ct. 1173, 99 L.Ed.2d 357 (1988).  The court then stated that "[t]he point to be made here, however, is that evidence of the corporation's activities and their correlation with activities of the joint venture is proof of the nature of the business of the joint venture.... [T]he totality of the evidence supports the conclusion that the business of the joint venture was the sale of land and that the resulting gains should be taxed as ordinary income."  The Brambletts now appeal the decision of the tax court.

## III

On appeal, the Brambletts argue that Town East was not the agent of Mesquite East, and that, therefore, its activities cannot be attributed to Mesquite East.  They further argue that Mesquite East itself was not in the business of selling property, making the tax court's determination that the profits are ordinary income incorrect.  The commissioner argues that under the well-known principle of "substance over form," the business of Town East, selling property, can be attributed to Mesquite East, making its profits ordinary income.

## IV

In order to qualify for favorable treatment as long-term capital gain under Section 1202 of the Internal Revenue Code of 1954, the gain must arise from the sale or exchange of a "capital asset" held more than one year.  26 U.S.C. § 1222(3).  "[P]roperty held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" cannot be a capital asset.  26 U.S.C. § 1221(1).  It is well settled that the definition of a capital asset is to be construed narrowly.  *Corn Products Refining Co. v. Commissioner,* 350 U.S. 46, 52, 76 S.Ct. 20, 24, 100 L.Ed. 29 (1955).  The determination of whether Mesquite East was directly involved in the business of selling land is a factual determination, to be reversed only if clearly erroneous.  *Byram v. United States,* 705 F.2d 1418, 1423–24 (5th Cir.1983).

The tax court's opinion is in some respects, not very clear.  At one point, the court stated that

the facts support the conclusion that Mesquite East was in the business of selling land, directly or through Town East. Later, the court mentioned the agency principle, but did not specifically hold that Town East was the agent of Mesquite East. Finally, the court stated that the totality of evidence supports the conclusion that the business of the joint venture was the sale of land. The commissioner argues that what the tax court meant, was that under the substance over form principle, the activities of Town East can be attributed to Mesquite East.

This court can affirm a lower court's decision if there are any grounds in the record to support the judgment. *Mangaroo v. Nelson,* 864 F.2d 1202, 1204 n. 2 (5th Cir.1989); *Watts v. Graves,* 720 F.2d 1416, 1419 (5th Cir.1983). Therefore, we can affirm the decision of the tax court on one of three alternative grounds: (1) that the tax court was not clearly erroneous in finding that Mesquite East was direct ly in the business of selling land; (2) that Town East was the agent of Mesquite East; or (3) that the activities of Town East and their relationship to Mesquite East support the conclusion that Mesquite East was in the business of selling land.

V

The tax court held that Mesquite East was in the business of selling land, either directly or through Town East. This court has developed a framework to be used in determining whether sales of land are considered sales of a capital asset or sales of property held primarily for sale to customers in the ordinary course of a taxpayer's business. *Suburban Realty Co. v. U.S.,* 615 F.2d 171 (5th Cir.1980), *cert. denied,* 449 U.S. 920, 101 S.Ct. 318, 66 L.Ed.2d 147; *Biedenharn Realty Co. v. U.S.,* 526 F.2d 409 (5th Cir.1976), *cert. denied,* 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79; *U.S. v. Winthrop,* 417 F.2d 905 (5th Cir.1969). Three principle questions must be considered:

(1) Was the taxpayer engaged in a trade or business, and if so, what business?
(2) Was the taxpayer holding the property primarily for sale in that business?
(3) Were the sales contemplated by the taxpayer "ordinary" in the course of that business?

*Suburban Realty,* 615 F.2d at 178. Seven factors which should be considered when answering these three questions are: (1) the nature and purpose of the acquisition of the property and the duration of the ownership; (2) the extent and nature of the taxpayer's efforts to sell the property; (3) the number, extent, continuity and substantiality of the sales; (4) the extent of subdividing, developing, and advertising to increase sales; (5) the use of a business office for the sale of the property; (6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; and (7) the time and effort the taxpayer habitually devoted to the sales. *Id.* at 178; *Biedenharn,* 526 F.2d at 415; *Winthrop,* 417 F.2d at 910. The frequency and substantiality of sales is the most important factor. *Suburban Realty,* 615 F.2d at 178; *Biedenharn,* 526 F.2d at 416.

A review of these factors indicates that any finding by the tax court that Mesquite East was directly in the business of selling land is clearly erroneous. Mesquite East did not sell land frequently and the only substantial sale was the sale at issue. It conducted a total of five sales over a three-year period; two in 1979, one in 1980, one in 1981, and the one at issue in 1982. As a result of the first four transactions, Mesquite East made a profit of $68,394.80. On the sale at issue, Mesquite East made a profit of over seven million dollars. This record of frequency does not rise to the level necessary to reach the conclusion that the taxpayer held the property for sale rather than for investment. *Suburban Realty,* 615 F.2d at 174 (taxpayer made 244 sales over a thirty-two year period); *Biedenharn,* 526 F.2d at 411–412 (during thirty-one year period, taxpayer sold 208 lots and twelve individual parcels from subdivision in question; 477 lots were sold from other properties); *Winthrop,* 417 F.2d at 907 (taxpayer sold 456 lots over a nineteen-year period).

In *Byram,* this court affirmed the district court's finding that even though taxpayer made twenty-two sales over a three-year period, netting $3.4 million, he did not hold the property in question for sale:

> Though these amounts are substantial by anyone's yardstick, the district court did not clearly err in determining that 22 such sales in three years were not sufficiently frequent or continuous to compel an inference of intent to hold the property for sale rather than investment. This is particularly true in a case where the other factors weigh so heavily in favor of the taxpayer. "Substantial and frequent sales activity, standing alone, has never been held to automatically trigger ordinary income treatment."

*Byram,* 705 F.2d at 1425. In *Byram,* the taxpayer did not initiate the sales, he did not maintain an office, he did not develop the property and he did not devote a great deal of time to the transactions. *Id.* at 1424. The taxpayer held the property for six to nine months. In the case at hand, all of the other factors also weigh heavily in favor of the taxpayers. The stated purpose of Mesquite East was to acquire the property for investment purposes. It sought advice as to how to structure the transaction to preserve its investment purpose. Mesquite East held the property in question for over three years. Mesquite East did not advertise or hire brokers, it did not develop the property and it did not maintain an office. The partners did not spend more than a minimal amount of time on the activities of Mesquite East. In the light of the fact that all of these factors weigh so heavily in favor of the taxpayers, and in the light of the fact that Mesquite East made only one substantial sale and four insubstantial sales over a three-year period, any finding by the tax court that Mesquite East was directly in the business of selling land is clearly erroneous. Therefore, we cannot affirm the tax court's decision on this ground.

VI

It is not clear from the tax court's opinion whether the court found that Town East was the agent of Mesquite East, and that therefore, Mesquite East was in the business of selling land through Town East, or whether it attributed the activities of Town East to Mesquite East based on a "substance over form" principle.[1]

---

[1]The Brambletts argue that Town East was not the agent of Mesquite East and that the tax court incorrectly applied agency law. The commissioner argues that the tax court did not rely on agency principles at all. The commissioner also contends that agency principles should not apply in this case. He argues that in *National Carbide Corp. v. Commissioner,* 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779 (1949), and *Commissioner v. Bollinger,* 485 U.S. 340, 108 S.Ct. 1173, 99 L.Ed.2d 357 (1988), the Court addressed the issue of whether the corporation could be viewed as holding the property as an agent for its shareholders, and consequently whether it should be taxed on any income received as a result of that property. In the case at hand, the commissioner argues

*National Carbide* and *Bollinger* set forth the standards for determining when a corporation is an agent of its shareholders. In *National Carbide,* the Court addressed whether three wholly owned subsidiaries of a corporation were agents of the parent corporation. The subsidiaries argued that since they were the agents of the parent, the income from their activities was really the parent's income. *National Carbide,* 336 U.S. at 424, 69 S.Ct. at 727. The Court held that the fact that the subsidiaries were completely owned and controlled by the parent was not enough to support the conclusion that they were the parent's agents. *Id.* 336 U.S. at 429, 69 S.Ct. at 730.

> Whether the corporation operates in the name and for the account of the principal, binds the principal by its actions, transmits money received to the principal, and whether the receipt of income is attributable to the services of the employees of the principle and to assets belonging to the principal are some of the relevant considerations in determining whether a true agency exists. If the corporation is a true agent, its relations with its principal must not be dependent upon the fact that it is owned by the principal, if such is the case. Its business purpose must be the carrying on of the normal duties of an agent.

*Id.* 336 U.S. at 437, 69 S.Ct. at 734. The Supreme Court held that the subsidiaries were not agents of the corporation simply when the business arrangement arose because of ownership and domination by the parent. The Court acknowledged that the arrangement would not have been the same if third parties owned the subsidiaries. *Id.* 336 U.S. at 438, 69 S.Ct. at 734.

The Supreme Court again addressed the agency question in *Bollinger.* There, several partnerships were formed to develop apartment complexes, and in each instance, the partnership entered into an agreement with the same corporation, which was wholly owned by Bollinger. The agreements provided that the corporation would hold title to the properties as the partnerships' agent, but that the partnerships would have sole control, responsibility and ownership of the complexes. *Bollinger,* 108 S.Ct. at 1174. The partnerships reported the income and losses generated by the complexes on their tax returns, and the partners reported their distributive share. The Commissioner

---

that it is clear that Town East was a bona fide corporation and that its sales income was properly taxable to it. He argues that what is at issue in this case is the character of the gain on Mesquite East's sale to Town East. We do not reach the issue of what the tax effect would be if Town East were the agent of Mesquite East; we only hold that under *National Carbide* and *Bollinger,* Town East was not the agent of Mesquite East.

disallowed the losses, arguing that the *National Carbide* test had not been met and that since the corporation was not the agent of the partnerships, it should not be ignored for tax purposes. *Id.* 108 S.Ct. at 1176. The Commissioner argued that in order for the fifth *National Carbide* factor —that the corporate agent's relations with the principal not be dependent on the fact that it is owned by the principal —to be satisfied, there must be an arm's length agreement between the two which includes the payment of a fee for agency services. *Id.* 108 S.Ct. at 1178. The Supreme Court noted that the fifth factor was abstract and refused to hold that it required an arm's length agreement plus an agency fee. *Id.* Instead, the Court held that the agency relationship was proved and tax-avoiding manipulation avoided when:

> the fact that the corporation is acting as agent for its shareholders with respect to a particular asset is set forth in a written agreement at the time the asset is acquired, the corporation functions as agent and not principal with respect to the asset for all purposes, and the corporation is held out as the agent and not the principal in all dealings with third parties relating to the asset.

*Id.* 108 S.Ct. at 1179.

An analysis of the *National Carbide* factors does not lead to the conclusion that Town East was the agent of Mesquite East. There is no evidence that Town East ever acted in the name of or for the account of Mesquite East. Town East did not have authority to bind Mesquite East. Town East did transfer money to Mesquite East, but it was the amount of the agreed upon fair market value of the property at the time of the sale. Town East realized a profit from its development that was much larger than a typical agency fee. The receipt of income by Town East was not attributable to the services of employees of Mesquite East or assets belonging to the joint venture. None of the first four factors support the conclusion that Town East was the agent of Mesquite East. Under the fifth factor, common ownership of both entities is not enough to prove an agency relationship. The sixth factor requires the business purpose of the agent to be the carrying on of normal agent duties. It is clear that Town East was not carrying on the normal duties of an agent; it was not selling or developing the property on behalf of Mesquite East because Town East retained all of the profit from

development. Thus, under the standards set forth in *National Carbide,* Town East was not an agent of Mesquite East. Nor are there any other factors, such as those in *Bollinger,* that indicate that Town East was the agent of Mesquite East. Therefore, we cannot affirm the tax court's decision on the grounds that Town East was the agent of Mesquite East.

## VII

The Commissioner argues that the tax court correctly attributed the activities of Town East to Mesquite East. He further argues that the well known principle of substance over form supports this attribution. The Supreme Court recently stated that in applying the principle of substance over form:

> the Court has looked to the objective economic realities of a transaction, rather than to the particular form the parties employed. The Court has never regarded "the simple expedient drawing up of papers," as controlling for tax purposes when the objective economic realities are to the contrary. "In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal rigid documents are not rigidly binding." Nor is the parties' desire to achieve a particular tax result necessarily relevant.

*Frank Lyon Co. v. United States,* 435 U.S. 561, 573, 98 S.Ct. 1291, 1298, 55 L.Ed.2d 550 (1978) (internal citations omitted). The Supreme Court further stated, however, that in cases where the form chosen by the taxpayer has a genuine economic substance, "is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax-avoidance features," *Frank Lyon,* 435 U.S. at 583–84, 98 S.Ct. at 1303–04, the government should honor the tax consequences effectuated by the taxpayer.

The Commissioner argues that when determining what the partnership's purpose was for holding the land, the tax court correctly looked to the economic substance of the transactions as a whole and attributed the activity of Town East to Mesquite East. We disagree. The business of a corporation is not ordinarily attributable to its shareholders. *Brown v. Commissioner,* 448 F.2d 514, 518 (10th Cir.1971). Neither the tax court nor the Commissioner argue that Town East is a sham corporation whose corporate shield can be pierced. Indeed, the tax court recognized and the

Commissioner contends that both are separate taxable entities. Moreover, there was clearly at least one major independent business reason to form the corporation and have it develop the land and sell it —that reason being to insulate the partnership and the part ners from unlimited liability from a multitude of sources. Furthermore, there is no substantial evidence that the transaction was not an arm's length transaction or that business and legal formalities were not observed. Finally, the partnership bought the real est ate as an investment, hoping its value would appreciate.[2] The partnership, however, bore the risk that the land would not appreciate. Therefore, the tax court erred in finding that the activity of Town East can be attributed to Mesquite East and, consequently, that Mesquite East was in the business of selling land. Mesquite East held the land as an investment and is therefore entitled to capital gains treatment on the gain realized by the sale.

VIII

Thus, we conclude. Any finding by the tax court that Mesquite East was directly in the business of selling land is clearly erroneous. Neither the frequency nor the substantiality of the sales made by Mesquite East supports the conclusion that Mesquite East was directly in the business of selling land. The tax court's opinion cannot be affirmed on the grounds that Town East was the agent of Mesquite East. An analysis of the *National Carbide* factors compels the conclusion that Town East was not acting as the agent of Mesquite East and there are no other factors, such as those in *Bollinger,* that support that conclusion. Finally, the activities of Town East may not be attributed to Mesquite East when determining whether Mesquite East was in the business of selling land. The corporation is not a sham; there was at least one major independent reason to form the corporation. Furthermore, the partners did invest in a capital asset in the sense that they bore the risk that the land would not appreciate. Therefore, the partnership held the land as a capital asset and is entitled to capital gains treatment. The decision of the tax court is

---

[2]The main objective of the § 1221(1) exclusion is to distinguish between business and investment, and to disallow capital gains treatment on the everyday profits of the business and commercial world. A taxpayer who sells a parcel of undeveloped land bought as an investment is clearly entitled to capital gains treatment on the gain realized by the sale. Stanley S. Surrey, Definitional Problems in Capital Gains Taxation, 69 Harv.L.Rev. 985, 990 (1956).

REVERSED.