ESTATE of Samuel SEGEL, Deceased, Margaret D. Segel, Executrix and Margaret D. Segel, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 8, Docket 30387.

United States Court of Appeals Second Circuit.

Argued Nov. 29, 1966.

Decided Dec. 20, 1966.

Gerard R. Gemmette, Schenectady, N. Y. (Louis Lombardi, Schenectady, N. Y., on the brief), for petitioners.

Marco S. Sonnenschein, Atty., Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Gilbert E. Andrews, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before LUMBARD, Chief Judge, FRIENDLY and SMITH, Circuit Judges.

SMITH, Circuit Judge:

This is a petition to review a decision of the United States Tax Court, Irene F. Scott, Judge, which held that the proceeds from the sales of two tracts of land were ordinary income, not capital gains. The question for determination is whether the court's finding that petitioner* held the tracts "primarily for sale to customers in the ordinary course of his trade or business" under § 1221(1) of the Internal Revenue Code of 1954 is "clearly erroneous." See Yara Engineering Corp. v. Commissioner of Internal Revenue, 344 F.2d 113 (3d Cir. 1965). We hold that it is not and affirm the decision below.

The petitioner was a licensed real estate broker in Utica, New York, who dealt primarily in business property. He usually did not take title to realty but

---

* Samuel Segel, although deceased, will be treated as petitioner. His wife, Margaret Segel, is involved only as executrix and because a joint return was filed.

rather received commissions from sales. In the fall of 1957, Segel purchased a tract of land from one Sarah K. Appleton for $3,000 cash and a $20,500 purchase money mortgage payable, at Mrs. Appleton's election, either in one year or in three annual installments. It was further agreed that, upon payment of $1,000 per acre, petitioner could receive land clear of the mortgage. In 1958, petitioner conveyed parts of this tract to the City of Utica for streets and sold the remainder to Savage Homes, Inc. for $77,000. Savage took subject to the mortgage and received the right to release. In performance of a promise with Savage to improve and develop the tract into residential building lots, petitioner spent $1,130 for a survey and staking out the streets. Half of petitioner's profit from the sale of the Appleton tract went to one Rufus P. Elefante for services rendered in arranging for developing the property to the point that city sewers and water would be available and proper zoning obtained.

In 1959, Segel purchased the second tract of land, which was contiguous to the first one, from George H. Burton for $3,000 cash and a $24,000 purchase money mortgage due in two years. Burton agreed to release each building lot free of the mortgage for $500. In exchange for development services, petitioner assigned one-half interest in the property to Elefante. During June 1959, petitioner conveyed portions of the tract to the City of Utica for streets and granted the city an easement to construct and maintain a storm water sewer. A map subdividing the Burton tract into building lots was filed at the clerk's office in Oneida County in September. In June 1960, for $82,305, petitioner deeded the tract, except for part in Deerfield, New York, to Savage. Again, petitioner promised to improve and develop the land and spent $3,000 on surveying and staking. Also Savage received the right to release a building lot for $900.

■ This court has set out the following guidelines, which, although not conclusive, are useful in drawing the distinction between investors and dealers in the ordinary course of trade or business:

"(1) the frequency, number, and continuity of the sales; (2) subdivision, platting, and other improvements or developments tending to make the property more marketable; (3) the extent to which the taxpayer engaged in sales activity; (4) the length of time the property has been held; (5) the substantiality of the income derived from the sales, and what percentage that is of the taxpayer's total income; (6) the nature of the taxpayer's business; (7) the taxpayer's purpose in acquiring and holding the property; (8) the extent of sales promotional activity such as advertising; and (9) the listing of property directly or through brokers." Gault v. Commissioner of Internal Revenue, 332 F.2d 94, 96 (2d Cir. 1964).

■ Even though petitioner made only two sales, usually did not take title to realty as he did in this case and did not engage in sales and promotional activity, the other Gault factors support the government's characterization of the transactions. The $4,300 spent by petitioner, the installation of utilities by the city and Elefante's services improved and developed the tracts; one tract was held for only seven months and the other for just less than a year; the $23,997.-75 gain realized from the sale of the Appleton tract constituted 86% of petitioner's income in 1959 and the $19,258 derived from the sale of the Burton tract constituted 67% of his income in 1960; petitioner was in the real estate business; the court found that "petitioner purchased both the Appleton and Burton tracts with the definite intent to sell the property at a profit as soon as feasible after the expiration of the 6-month period necessary to cause the gain on the sale of a capital asset to be taxed as long-term capital gain." Because petitioner is a broker, the ninth guideline may be considered inapplicable. In addition to the foregoing Gault factors, the short term financing and the mort-

gage release clauses support the Tax Court's conclusion. Certainly, it cannot be said that the finding that petitioner held the tracts "primarily[1] for sale to customers in the ordinary course of his trade or business" is "clearly erroneous." The judgment of the Tax Court is affirmed.

1. Taxpayer points out that "primarily" is defined as "of first importance" or "principally." Malat v. Riddell, 383 U.S. 569, 572, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966). This is of no help to him in the case at bar. We have no problem such as existed in that case, for the court here found no other purpose in holding the land than development and sale.