ARAM P. JARRET, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jarret v. Commissioner
Docket No. 4576-92
United States Tax Court
T.C. Memo 1993-516; 1993 Tax Ct. Memo LEXIS 527; 66 T.C.M. (CCH) 1224; November 9, 1993, Filed *527 Decision will be entered under Rule 155. P, an attorney who also ran a real estate development business with B, purchased a parcel of land with B in 1985. One portion fronted on a public road; P and B divided this portion into 21 lots, which they sold. The other portion, the Backland, was unmarketable without further developmental work. P and B performed such work over a 1-1/2 year period, and attended planning board meetings in order to obtain approval for a subdivision so that they could sell the Backland to a developer. They sold the Backland to a developer 1 month after they obtained such approval. Held: The Backland is not a capital asset, as it was held for sale in the ordinary course of P and B's real estate business; P's share of the gain on sale of the Backland is ordinary income to P. Aram P. Jarret, pro se. [1]
Robert E. Marum, for respondent. *528 LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: Respondent determined deficiencies in and additions to the 1986 Federal income tax of Aram P. Jarret (petitioner) as follows: Additions to Tax
Sec. Sec. Sec.
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
6661
$ 88,612
$ 4,431
[1]
$ 22,153
Petitioner timely petitioned this Court for redetermination of respondent's determinations reflected in her notice of deficiency. After concessions, [2] the issues for decision are: (1) Whether certain real estate that petitioner sold during the year in issue was an asset held primarily for sale to customers in the ordinary course of a trade or business or was an asset held primarily for investment; (2) whether petitioner is liable for additions to tax for negligence for the 1986 taxable year; and (3) whether petitioner is liable for an addition to tax for substantial understatement of tax for the 1986 taxable year. We hold that the real estate was an asset held primarily for sale to customers in the ordinary course of a trade or business and that petitioner is liable for additions to tax for *529 negligence and substantial understatement of tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and exhibits attached thereto are incorporated *530 herein by this reference. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Petitioner resided in Slatersville, Rhode Island, at the time he filed his petition. Petitioner has been a general practice and real estate attorney since 1969. In September 1985, petitioner and Henri Bourque (Bourque) organized a corporation called Country Classics, Inc. (Country Classics) to operate a real estate development, sale, and construction business. On Schedule C, Profit (or Loss) from Business or Profession (Sole Proprietorship), of his 1986 Federal income tax return, petitioner reported $ 253,852 of gross receipts from his law practice. He filed a separate Schedule C for his own real estate "development" business. In June 1985, petitioner received a letter from Northern Rhode Island Home Realty (Home Realty) inquiring whether he would be interested in purchasing an unimproved parcel of land of approximately 140 acres (the Parcel). A portion of the Parcel adjoined Log Road in North Smithfield, Rhode Island (the Town). Petitioner and Bourque purchased *531 the Parcel in October 1985 for $ 325,000. They obtained a $ 350,000 loan from Marquette Credit Union (Marquette) collateralized by the Parcel. Marquette's commitment letter provided that the purpose of the financing was development of the Parcel in two phases. The first phase was the creation of 23 lots fronting on Log Road (the Frontland); the second phase would involve the back of the property, which did not front on any public road (the Backland). The commitment letter further provided that as the lots sold, a portion of the proceeds would be applied to the principal of the loan. After the purchase, the petitioner and Bourque divided the Parcel into the Frontland and the Backland. The Frontland did not require any governmental approval for subdivision; petitioner and Bourque subdivided it into 21 individually saleable lots. [3] Immediately thereafter, petitioner and Bourque listed these lots for sale with Home Realty; they did not list the Backland. Because the Backland, which consisted of 77.381 acres, did not front on any public roadway, it was not marketable even as one lot; local zoning and planning board regulations prohibited its development. *532 In November 1985, petitioner and Bourque contributed the Parcel to Country Classics. Country Classics sold substantially all the Frontland lots within 30 to 60 days. In March 1986, Country Classics reconveyed the Backland to petitioner and Bourque. They hoped to obtain approval from the Town for a subdivision, and then sell the Backland, with the approval, to a developer as one parcel. In order to obtain such approval from the Town, petitioner and Bourque filed a pre-preliminary plan with the Town on August 1, 1985, and attended monthly public meetings of the Town planning board for the next 1-1/2 years. A broker from Home Realty also attended some of these meetings in order to expedite approval of the subdivision. During this period, petitioner and Bourque also: (1) Hired an engineer, who performed tests to determine where septic systems could be installed; (2) had topographical maps of the Backland prepared; (3) undertook extensive legal research to show that Log Road was a public roadway so that a subdivision could be established off it; and (4) granted a cemetery easement on the Backland. Eastern Building and Development (Eastern) was a developer and worked on many projects *533 with Home Realty. In June 1986, a Home Realty real estate broker showed representatives of Eastern a map of the Backland and introduced Eastern's representatives to petitioner. In the same month, Eastern signed an agreement to purchase the Backland contingent on petitioner and Bourque obtaining Town approval for a subdivision. In November 1986, the Town approved a 31-lot subdivision on the Backland; Eastern purchased the Backland in December 1986. Petitioner reported $ 141,284 capital gain from the sale of the Backland on his 1986 Federal income tax return. OPINION The term "capital asset" generally means property held by the taxpayer, but does not include inventory or "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". Sec. 1221(1). Profits from the sale of these latter assets are taxed at the rates applicable to "ordinary" income rather than capital gain. Secs. 61, 1222. Whether the Backland is a capital asset or was held primarily for sale in the ordinary course of petitioner's real estate development business is a factual determination. Bramblett v. Commissioner, 960 F.2d 526 (5th Cir. 1992), *534 revg. T.C. Memo. 1990-296; Bauschard v. Commissioner, 279 F.2d 115, 117 (6th Cir. 1960), affg. 31 T.C. 910 (1959). Courts have developed the following nonexclusive factors to assist in this determination: (1) The nature of the taxpayer's business; (2) the taxpayer's purpose in acquiring and holding the property; (3) subdivision, platting, and other improvements tending to make the property more marketable; (4) the frequency, number, and continuity of sales; (5) the extent to which the taxpayer engaged in the sales activity; (6) the length of time the property was held; (7) the substantiality of income derived from the sales, and what percentage such income was of the taxpayer's total income; (8) the extent of advertising and other promotional activities; and (9) whether the property was listed directly or through brokers. Estate of Segel v. Commissioner, 370 F.2d 107, 108 (2d Cir. 1966), affg. T.C. Memo. 1965-221; Gault v. Commissioner, 332 F.2d 94, 96 (2d Cir. 1964), affg. T.C. Memo. 1963-178. *535 Although the above-described factors assist in our determination, we must consider all of the facts and circumstances; no individual factor or set of factors is controlling. Thompson v. Commissioner, 322 F.2d 122, 127 (5th Cir. 1963), affg. in part and revg. in part 38 T.C. 153 (1962); Wood v. Commissioner, 276 F.2d 586, 590 (5th Cir. 1960), affg. in part and revg. in part T.C. Memo. 1958-105; Browne v. Commissioner, 174 Ct. Cl. 523, 356 F.2d 546 (1966). The purpose of this analysis is to determine whether, within the meaning of section 1221(1), petitioner conducted a trade or business and whether the Backland was held by petitioner primarily for sale to customers in the ordinary course of this trade or business. Cappuccilli v. Commissioner, T.C. Memo. 1980-347, affd. 668 F.2d 138 (2d Cir. 1981). Although petitioner is an attorney, he also unequivocally conducted a real estate business during the year in issue. Petitioner and Bourque incorporated Country Classics *536 to develop and sell real estate. Petitioner also filed a Schedule C for his own real estate development business. Thus, the only issue is whether petitioner held the Backland primarily for sale to customers in the ordinary course of such business. Petitioner intended to resell the Backland as soon as it became marketable. He and Bourque contributed the entire Parcel to Country Classics for development, not just the Frontland. Although they focused initially on subdividing and selling the Frontland lots, petitioner admitted that he hoped to obtain approval from the Town for a subdivision on the Backland so that he could sell it to a developer. In fact, petitioner filed a pre-preliminary plan with the Town even prior to purchasing the parcel. Petitioner and Bourque worked with the Town for 1-1/2 years in order to obtain approval for a subdivision, the only way it would be marketable. They hired an engineer, who performed tests to determine where septic systems could be installed. They had topographical maps of the Backland prepared. Petitioner undertook extensive legal research to show that Log Road was a public roadway, necessary to obtain subdivision approval. They also *537 granted a cemetery easement. All of this activity indicates petitioner's desire to sell the Backland in the ordinary course of his own real estate development business, not hold it for investment purposes. Although petitioner did not list or advertise the Backland for sale, he did not need to do so. A Home Realty broker convinced Eastern to sign a purchase agreement before the Backland had been approved for a subdivision, contingent on such approval, and Eastern did in fact purchase the Backland shortly after subdivision approval was obtained. In fact, the Home Realty broker attended meetings of the Town planning board in order to assist in obtaining the necessary subdivision approval for the Backland. The quick turnover petitioner accomplished as soon as the necessary Town approval was obtained also reflects petitioner's sales rather than investment motive. Viewing these factors as a whole in the context of the entire record of the case, it is apparent that the instant case is not one where petitioner originally acquired the Backland for investment and sold it only fortuitously. Cf. Thompson v. Commissioner,supra at 127. In fact, the entire *538 record indicates that petitioner and Bourque acquired and held the Backland with the intention of obtaining approval for a subdivision and thereafter selling it at a profit. Cf. Philhall Corp. v. United States, 546 F.2d 210, 215 (6th Cir. 1976) (intent to hold property for sale to customers in ordinary course shown by taxpayer's efforts to obtain planning commission's approval to develop property as a subdivision); Margolis v. Commissioner, 337 F.2d 1001, 1004-1005 (9th Cir. 1964) (where real estate dealer intended to resell certain property for a profit and held it until he could do so, even holding such property a long time did not render it an investment), affg. in part and revg. in part T.C. Memo. 1962-86; Browne v. Commissioner, supra at 546, 547 (taxpayers' substantial developmental activities on undeveloped tract; use of and sale to their controlled corporation, which continued such development; and comparable purchases by taxpayers of other real estate for development, indicated that they were real estate dealers and that they held tract *539 for sale in the ordinary course of such business). We conclude that petitioner and Bourque ran a real estate business; they held the Backland for sale to a developer, rather than as an investment for appreciation; and they sold the Backland to a customer in the ordinary course of their real estate development business. [4] Cf. Cappuccilli v. Commissioner, T.C. Memo. 1980-347, affd. 668 F.2d 138 (2d Cir. 1981). Thus, the Backland is not a capital asset, and petitioner realized ordinary income on its sale. Sec. 1221(1).
*540 We now turn to the issue of whether petitioner is liable for additions to tax for 1986. Respondent determined additions to tax for negligence under section 6653(a)(1)(A) and (B); she asserted that petitioner's underpayment of income taxes in each year was due to negligence or intentional disregard of rules or regulations. Section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is attributable to negligence, and section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. Negligence includes a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Accardo v. Commissioner, 942 F.2d 444, 452 (7th Cir. 1991), affg. 94 T.C. 96 (1990); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner bears the burden of proving that respondent's determination of negligence is erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). *541 We note that petitioner is an attorney and hold that petitioner has not met this burden. Thus, we sustain respondent's determination of additions to tax for negligence. Respondent also determined that petitioner is liable for an addition to tax for substantial understatement of tax under section 6661. The amount of the section 6661 addition to tax for additions assessed after October 21, 1986, equals 25 percent of the amount attributable to the substantial understatement. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951; Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). An understatement is reduced to the extent it is: (1) Based on substantial authority, or (2) adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2). Respondent's determination of an addition to tax for substantial understatement under section 6661 is presumed to be correct and petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); *542 Sandvall v. Commissioner, 898 F.2d 455, 459 (5th Cir. 1990), affg. T.C. Memo. 1989-56. Petitioner did not attach a disclosure statement to his return, see sec. 1.6661-4(b), Income Tax Regs., nor did petitioner make a disclosure on his return adequate for this purpose, see sec. 1.6661-4(c), Income Tax Regs.; Rev. Proc. 87-48, 1987-2 C.B. 645. Petitioner also did not establish that he had substantial authority for treating the Backland as a capital asset. Accordingly, petitioner will be liable for an addition to tax under section 6661, if the Rule 155 computation reflects a substantial understatement within the meaning of section 6661(b)(1). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Paul Plourde and Arthur J. Leonard represented petitioner from the time he filed his petition on March 2, 1992, until March 16, 1993, when we granted their motion to withdraw. ↩
1. This amount is 50 percent of the interest on the deficiency.↩
2. With respect to the year in issue, petitioner concedes: (1) That his filing status was married filing separate return, not married filing joint return; (2) that he was not entitled to a "married couple deduction" in the amount of $ 10; (3) that his excess itemized deductions were $ 24,466; (4) the adjustment of $ 25,202 from the sale of two parcels of land, as set forth in respondent's notice of deficiency; and (5) that the net profit from his law practice should be increased to $ 85,225. Respondent concedes that: (1) Petitioner is entitled to exemptions for his six children; (2) petitioner's realized income from recapture of excess depreciation from the sale of certain rental property is $ 3,614; and (3) the amount of long-term capital gain reported by petitioner on Form 4797 from the sale of such rental property is $ 21,437.↩
3. The record does not reveal why petitioner and Bourque subdivided the portion of the parcel that fronted on Log Road into 21 lots rather than 23.↩
4. The cases cited by petitioner involving single plots of land where a portion was held for sale in the ordinary course of business and a portion was held for investment are all distinguishable. In Mieg v. Commissioner, 32 T.C. 1314, 1320 (1959), the taxpayer made no effort to increase the marketability of the property; the sudden increase in the value of otherwise unmarketable land was attributable to the location of a country club nearby. In Crabtree v. Commissioner, 20 T.C. 841, 847-848 (1953), this Court accorded the taxpayer investment treatment for the sale of a lot on which he had planned to build his personal residence and for the sale of single-dwelling defense housing units he had built and held for rental purposes, where he did not solicit, and in fact refused, numerous offers to purchase them. In Farry v. Commissioner, 13 T.C. 8, 11-14↩ (1949), the taxpayer, a real estate dealer, had some property he rented out and managed, maintaining records for this rental income separate from those of his real estate sales income; this Court held that the sale of the rental real estate, which was caused by petitioner's concern about rent control and other financial reasons, was a sale of a capital asset, not a sale of property he held for sale in the ordinary course of his trade or business.