T.C. Memo. 1997-203


UNITED STATES TAX COURT


JAMES E. ZURCHER, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5797-96.                    Filed May 5, 1997.


Sebastian D'Amico, for petitioner.

Karen Nicholson Sommers, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  James E. Zurcher, Jr., petitioned the Court to redetermine respondent's determination of a $24,142 deficiency in his 1992 Federal income tax and a $4,828 penalty under section 6662(a).  We must decide the following issues:

1. Whether petitioner's loss on his sale of real estate was capital or ordinary. We hold it was capital.

2. Whether petitioner is liable for the accuracy-related penalty determined by respondent under section 6662(a).[1] We hold he is not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference. Petitioner resided in Carlsbad, California, when he petitioned the Court.

In 1989, petitioner received a written proposal from Robert L. Grant, Sr. (Mr. Grant), a "hands on" building contractor licensed by the State of California, memorializing their understanding concerning Mr. Grant's proposed purchase of a 1-acre lot of land and his development of a single-family residence thereon. Mr. Grant and petitioner understood that Mr. Grant needed petitioner's funds to purchase the lot and to construct the residence. Mr. Grant and petitioner understood that Mr. Grant would pay petitioner "for the use of his funds, Interest at the current rate (Generally Prime+ 2 %) and a 50% share of the profit at the sale and close of escrow of the

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

project."  Mr. Grant and petitioner understood that petitioner's "interest [would] be secured by Joint Title to all projects."

Petitioner and Mr. Grant jointly purchased a vacant lot on Gracey Lane in Fallbrook, California, on or about September 22, 1989, and by the end of 1990 Mr. Grant had built a single-family residence on it (we collectively refer to the lot and the residence as the Property).  Petitioner and Mr. Grant did not enter into a formal partnership agreement with respect to the purchase of the lot or the building of the residence.  Petitioner financed the residence's construction, and Mr. Grant was the builder.  Mr. Grant supervised the construction and hiring of crews and subcontractors who participated in the development of the Property.

After Mr. Grant had built the residence on the lot, the Property was offered for sale at approximately $389,000.  The Property did not sell as expected, and Mr. Grant realized that he could not pay petitioner the agreed rate of return on his investment.  In January 1991, Mr. Grant quitclaimed his interest in the Property to petitioner to allow him to attempt to recover his promised return.  In 1992, petitioner sold the Property for $279,000.  With the exception of this sale and the sale of his personal residence, petitioner was not involved in any other real estate sales activity from 1990 through 1994.

Petitioner never maintained a business office with respect to his participation in the Property, and he did not have a

business license in his name. Petitioner did not have a business name, and he did not have a business telephone. Petitioner did not belong to any trade association, and he did not have any employees. Petitioner did not advertise the Property for sale; all advertising was done by a real estate agent with whom petitioner listed the Property for sale.

Petitioner filed a 1992 Form 1040, U.S. Individual Income Tax Return, using the filing status of "Single". The return was prepared by petitioner's long-time tax preparer, a certified public accountant (C.P.A.), and it listed petitioner's occupation as "investments". Petitioner's 1992 gross income was $186,003, exclusive of a $3,000 capital loss and a $71,504 loss that he reported on the sale of the Property. Most of petitioner's gross income was from interest, dividends, and petitioner's involvement in numerous partnerships.

Petitioner reported the $71,504 loss on his 1992 Schedule C, Profit or Loss From Business (Sole Proprietorship), as an ordinary loss: $71,304 of this amount was due to the loss on the sale of the Property and $200 was attributable to "Legal and professional fees". The Schedule C stated that petitioner was a "developer", that he had operated his business for 5 months during 1992, and that his business was not in operation at the end of 1992. Petitioner and his C.P.A. discussed petitioner's financial data before the C.P.A. prepared petitioner's return, and they discussed the facts behind petitioner's involvement in

the Property.  Petitioner supplied the C.P.A. with all relevant information to prepare petitioner's return, and petitioner relied on the C.P.A. to report the sale of the Property correctly.  The C.P.A. advised petitioner that he was entitled to claim an ordinary loss on his sale of the Property.

Petitioner's 1992 Schedule C was the first Schedule C that petitioner had filed with respect to the Property.  On his 1990 income tax return, petitioner deducted the Property's real estate taxes on Schedule A, Itemized Deductions.

The notice of deficiency states that petitioner's $71,504 loss was a long-term capital loss.

## OPINION

We must decide whether the Property was a capital asset in petitioner's hands.  A "capital asset" includes all property held by a taxpayer, with certain exceptions.  The parties focus on one of these exceptions, namely, "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business".  Sec. 1221(1).  If the Property is within this exception, petitioner's $71,504 loss is deductible in full.  See sec. 165(a), (c)(1).  If the Property is not within this exception, petitioner's recognizable loss for 1992 with respect to the Property (and other capital assets) is allowable only to the extent of any gains from the sale or exchange of capital assets plus (if the capital loss exceeds gains) the lesser of

$3,000 a year or the excess of loss over the gains.  Sec. 1211(b).

Whether the Property is a capital asset or was instead held primarily for sale in the ordinary course of petitioner's business is a factual determination.  Kelley v. Commissioner, 281 F.2d 527 (9th Cir. 1960), affg. T.C. Memo. 1959-63; Daugherty v. Commissioner, 78 T.C. 623, 628 (1982).  Courts have developed the following nonexclusive factors to assist in this determination:  (1) The nature of the taxpayer's business; (2) the taxpayer's purpose in acquiring and holding the property; (3) subdivision, platting, and other improvements tending to make the property more marketable; (4) the frequency, number, and continuity of sales; (5) the extent to which the taxpayer engaged in the sales activity; (6) the length of time the property was held; (7) the substantiality of income derived from the sales, and what percentage the income was of the taxpayer's total income; (8) the extent of advertising and other promotional activities; and (9) whether the property was listed directly or through brokers.  Parkside, Inc. v. Commissioner, 571 F.2d 1092, 1096 (9th Cir. 1977), revg. on other grounds T.C. Memo. 1975-014; Estate of Segel v. Commissioner, 370 F.2d 107, 108 (2d Cir. 1966), affg. T.C. Memo. 1965-221; Howell v. Commissioner, 57 T.C. 546, 554 (1972).

Although the above-described factors assist in our determination, we must consider all of the facts and circumstances; no individual factor or set of factors is

controlling. <u>Buono v. Commissioner</u>, 74 T.C. 187, 199 (1980). The purpose of this analysis is to determine whether, within the meaning of section 1221(1), petitioner conducted a trade or business and whether petitioner held the Property primarily for sale to customers in the ordinary course of this trade or business. <u>Cappuccilli v. Commissioner</u>, T.C. Memo. 1980-347, affd. 668 F.2d 138 (2d Cir. 1981). Petitioner bears the burden of proof. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Following our review of the record, and after our consideration of all the relevant facts, we conclude that petitioner held the Property as a capital asset. We find that petitioner was merely an investor in the Property, rather than a developer of it. He provided an infusion of capital for Mr. Grant's development of the Property, and petitioner did not actively participate in the Property's development. Although petitioner sold the Property himself, this was a one-time event in which petitioner took a relatively passive role by retaining a real estate agent to sell it for him. Moreover, petitioner sold the Property himself only because Mr. Grant, after completing construction of a residence on the Property, relinquished his interest to petitioner in satisfaction of the money Mr. Grant owed to petitioner. Petitioner made no meaningful improvements to the Property, did not personally advertise the Property for sale, and sold it at a loss. Petitioner's activity regarding the

property was not regular or continuous. Petitioner claimed an itemized deduction for the Property's real estate taxes on his 1990 Schedule A, rather than a business expense on Schedule C.

Petitioner's claim to an ordinary loss is rooted in his assertion that he was Mr. Grant's active partner in the Property's development. Petitioner asks the Court to find as a fact that he and Mr. Grant entered into an oral partnership agreement in or around June 1989 to develop the Property for profit, and that petitioner was actively involved in this partnership. We decline to do so. The fact of the matter is that petitioner simply has not proven that he was more than a financier of Mr. Grant's development of the Property. The record indicates that petitioner's actions were consistent with those of an investor, rather than a person who was involved in a working partnership. Petitioner was involved with the Property only because he had the money, and Mr. Grant did not. But for his investment of capital, through the form of a loan, we find that petitioner had no meaningful participation in the Property's development. Although petitioner testified at trial, in a somewhat general and vague manner, that he spent time and money preparing the Property for sale (e.g., by installing carpeting, drapery, flooring, and doing landscaping), his testimony fails to persuade us that the Property was not a capital asset in hands. We hold for respondent on this issue.

Respondent also determined that petitioner was liable for a penalty under section 6662(a) because he substantially understated his Federal income tax.  See sec. 6662(b)(2).  As relevant herein, section 6662(a) imposes an accuracy-related penalty equal to 20 percent of an underpayment that is due to a substantial understatement of income tax.  An individual substantially understates his or her income tax when the reported tax is understated by the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  Tax is not understated to the extent that the treatment of the item related thereto is based on substantial authority or is adequately disclosed in the return or in a statement attached to the return.  Sec. 6662(d)(2)(B).

Section 6662's accuracy-related penalty does not apply to any portion of an underpayment to the extent that an individual has reasonable cause for that portion and he or she acts in good faith with respect thereto.  Sec. 6664(c)(1).  Such a determination is made by taking into account all facts and circumstances, including the experience and knowledge of the taxpayer and his or her reliance on a professional tax adviser. Sec. 1.6664-4(b)(1), Income Tax Regs.

We hold that petitioner is not liable for the penalty in dispute.  Petitioner relied reasonably on his C.P.A. to report correctly the subject sale.  Petitioner met with the C.P.A. beforehand to discuss the facts surrounding the sale, and the

C.P.A. concluded that petitioner was entitled to ordinary loss treatment. Under the facts herein, we find that petitioner acted in good faith and with reasonable cause in reporting the transaction in the manner that he did.

We have reached our holdings herein after considering each party's arguments. To the extent that we have not discussed an argument, we have found it to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent for the deficiency and for petitioner for the accuracy-related penalty</u>.