T.C. Memo. 1996-427


UNITED STATES TAX COURT


BERNARD L. NADEAU, JR. AND NANCY L. NADEAU, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22865-94.                    Filed September 19, 1996.


Bernard L. Nadeau, pro se.

Blaine Holiday, for respondent.


MEMORANDUM OPINION

GOLDBERG, Special Trial Judge:  This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1]  Respondent determined deficiencies in petitioners' 1990, 1991, and 1992

_____

[1]     Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Federal income taxes in the respective amounts of $285, $2,761, and $2,130, and additions to tax for 1991 and 1992 pursuant to section 6651(a)(1) in the amounts of $276 and $455, respectively.

References to petitioner are to Bernard Nadeau.

After a concession by respondent,[2] the issues for decision are: (1) Whether petitioners are entitled to deduct losses attributable to petitioner's real estate rental activity, Nadeau Rentals, in computing his net earnings from self-employment for purposes of the self-employment tax; and (2) whether petitioners are liable for additions to tax, pursuant to section 6651, for failure to file timely returns for 1991 and 1992.

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated by this reference. Petitioners resided in Minneapolis, Minnesota, at the time they filed their petition.

Throughout the first half of the 1980's, petitioner performed services as an agent for musicians. Petitioner also held a real estate license. Petitioner wanted to get involved in a business that would generate sufficient capital to allow him to invest in real estate. In 1986, petitioner formed his own business, Art Rep Services, to represent photographers.

---

[2] Respondent concedes that petitioners have established the amount of the loss from real estate activity resulting in a recomputed deficiency of $1,709 and an addition to tax of $350 for the taxable year 1992.

Petitioner operated the business of Art Rep Services throughout the taxable years in issue.

Petitioner purchased a single family home in St. Paul, Minnesota, sometime in the early 1980's. Petitioner originally intended to renovate this house and sell it, recognizing appreciation due to the market combined with his improvements. Instead, petitioner rented it to a tenant within 3 months of purchase.

In 1984, petitioner purchased a second property, a duplex, in Minneapolis, Minnesota, on Pillsbury Avenue (Pillsbury property). Petitioner purchased this property with the intention of renting it while waiting for it to appreciate in value. Petitioner rented the top floor to tenants and moved into the first floor.

In 1990, petitioners married. Petitioner Nancy Nadeau owned a town house (Eden Prairie property) which she purchased in 1988. Beginning in 1990 petitioners received rental income from the Eden Prairie property through Nadeau Rentals.

In 1990, petitioners sold the Pillsbury property recognizing a gain of approximately $27,000, and purchased another duplex in Minneapolis, Minnesota, on Lyndale Avenue (Lyndale property) anticipating it would appreciate in value. Petitioners moved into one of the two units and rented the other. At the end of 1990, petitioners owned three properties, the St. Paul, Eden Prairie, and Lyndale properties.

In 1992, petitioners sold the Eden Prairie property. Petitioners recognized a loss on the sale in the amount of $5,806.85. At the end of 1992, petitioners still owned the other two properties.

On their 1990, 1991, and 1992 Federal income tax returns, petitioners included the gross rental receipts from real estate and the related deductions on petitioner's Schedule C, as profit or loss from petitioner's business, Nadeau Rentals. Petitioner reduced his self-employment income by the loss from Nadeau Rentals for each of these years. In all of the years in issue, petitioners claimed depreciation deductions for the properties as residential real estate. Petitioners' Federal tax return for 1990 reflects the sale of the Pillsbury property as the sale of a personal residence and the sale of business property. Petitioners recognized the portion of the gain attributable to the sale of the business property, all of which represented recapture of depreciation.

Petitioners' 1991 Federal income tax return was due on or before April 15, 1992. Petitioners received an automatic extension of time for filing that return until August 15, 1992, and filed on September 21, 1992. Petitioners' 1992 Federal income tax return was due on or before April 15, 1993. Petitioners were granted extensions of time for filing that return until October 15, 1993, and filed it on February 24, 1994.

In the notice of deficiency, respondent determined that the income and deductions from petitioner's rental activity should have been reported on Schedule E, Supplemental Income and Loss, not Schedule C, because the rental activity was passive, and therefore subject to the limitations on passive activity losses. The losses were allowed as deductions from adjusted gross income. They were not allowed, however, in the computation of petitioner's self-employment income.  Respondent's determination with respect to petitioner's self-employment income had the effect of increasing petitioners' earned income, thereby reducing the allowable earned income credit for the taxable years 1991 and 1992.

Petitioners argue that the income and expenses related to petitioner's real estate activity should be included in the calculation of petitioner's self-employment income.  Respondent contends that these amounts are attributable to rentals from real estate; that petitioner was not engaged in a trade or business as a real estate dealer; and that therefore these amounts are excluded from petitioner's self-employment income.  Respondent's determinations are presumed correct, and the burden of proof is on the taxpayer to prove that the determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Section 1401 imposes a tax on the self-employment income of individuals.  Sec. 1401(a).  The term "net earnings from self-employment" is defined by section 1402(a), in relevant part, as

the gross income derived by an individual from any trade or business carried on by such individual, less any allowable deductions attributable to such trade or business.

Generally, "rentals from real estate" and the attributable deductions are excluded in determining net earnings from self-employment, unless such rentals are received in the course of a trade or business as a real estate dealer. Sec. 1402(a)(1). "Rentals from real estate" include generally "Payments for the use or occupancy of entire private residences or living quarters in duplex or multiple housing units". Sec. 1.1402(a)-4(c)(1), Income Tax Regs.

Petitioner received the rental income for the use of residential units. Such income constitutes rentals from real estate. Accordingly, that rental income and the corresponding deductions are excluded from petitioner's net earnings from self-employment unless we determine that petitioner was engaged in the trade or business of a real estate dealer and that the rentals were received in the conduct of that business.

The determination of whether an individual is engaged in the trade or business of a real estate dealer is made by applying the principles applied in respect of taxes imposed under sections 1 and 3 of the Code. Sec. 1.1402(a)-4(a), Income Tax Regs. An individual who is engaged in the business of selling real estate to customers may be classified as a real estate dealer. Id. However, an individual who holds real estate for investment or

speculation and receives rentals therefrom is not a real estate dealer.  Id.

Whether property is held by a taxpayer for sale to customers in the ordinary course of the taxpayer's business or for another purpose is a question of fact, and each property must be considered on an individual basis.  Cottle v. Commissioner, 89 T.C. 467, 486 (1987).  In this analysis, courts have applied various factors including:  (1) The taxpayer's purpose for acquiring the property and the duration of ownership; (2) the number, frequency, regularity, and substantiality of the sales; (3) the taxpayer's efforts, including advertising, to sell the property; (4) the extent of developing and improving of the property to increase sales; and (5) the taxpayer's time and effort devoted to sales.  United States v. Winthrop, 417 F.2d 905, 910 (5th Cir. 1969); Cottle v. Commissioner, supra at 487.  These factors serve to guide the decision but none is necessarily of controlling significance.  Cottle v. Commissioner, supra at 488.

Applying these factors, we find that petitioners acquired and held the Pillsbury and Lyndale properties as investments.  The purpose for acquiring the Eden Prairie property is not clear from the record; however, petitioner testified that he held it for investment beginning in 1990.  In contrast, petitioner testified that when acquiring the St. Paul property he intended to resell it immediately after purchase.  However, the existence

of such intention does not compel a finding that petitioner was a dealer with respect to that property in the absence of evidence that petitioner held the property primarily for sale to customers in the ordinary course of his business. Howell v. Commissioner, 57 T.C. 546, 555 (1972); Ayling v. Commissioner, 32 T.C. 704, 709 (1959).

Petitioners owned the Eden Prairie and Pillsbury for 4 and 6 years, respectively, prior to their sale. Petitioner owned the St. Paul property in excess of 10 years. We find that the duration of ownership supports respondent's contention that petitioner was holding these properties for investment.

In addition, petitioner's sales were isolated. In the 3 years in issue, petitioner sold only two properties, including the property that petitioner Nancy Nadeau purchased prior to petitioners' marriage. The infrequency of petitioner's sales indicates that he held the properties for investment rather than for sale in the ordinary course of his business. See, e.g., United States v. Winthrop, supra (456 sales over 19 years was evidence that taxpayer held properties for sale); Ayling v. Commissioner, supra (13 sales over 4 years did not establish frequency of sales characteristic of a business).

Petitioner's sale in 1990 generated profits of approximately $27,000. This amount is substantial in comparison with petitioner's other net income of $15,059.53. This single substantial sale is not enough, however, to support the

conclusion that petitioner held the property for sale where other factors indicate the property was held for investment. Bramblett v. Commissioner, 960 F.2d 526, 531 (5th Cir. 1992), revg. T.C. Memo. 1990-296. Petitioner's other sale resulted in a loss of approximately $5,800.

Petitioner made virtually no showing as to the extent of his efforts to sell the properties, apart from his testimony that petitioners listed the Eden Prairie property for sale with the top real estate agent in Minnesota in 1990. He did not testify or offer any evidence as to the nature of his efforts to sell any of the other properties or the amount of time he committed to this activity.

To support their position, petitioners rely on petitioner's activities in repairing and improving the properties to make them saleable. A taxpayer may be engaged in the business of a real estate dealer when gains on property are generated by the actions and activities of the taxpayer, such as extensive improvements to the property. See Bynum v. Commissioner, 46 T.C. 295 (1966). Petitioner testified that he devoted considerable time and funds to renovating the properties. However, petitioner offered no corroborating evidence of the expenditures made to improve the properties. The only evidence in the record indicates that petitioner's efforts did not, in fact, generate profits. Petitioners sold the Eden Prairie property at a loss, and, while the Pillsbury property was sold at a gain, that gain resulted in

significant part from the recapture of the allowance for depreciation.

The testimony of petitioner regarding the sales of the properties and his efforts connected with this activity was for the most part general, inconsistent, unhelpful, and completely uncorroborated.  Under these circumstances, we are not required to rely on petitioner's testimony to support petitioners' position.  Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159.

In summary, we find that petitioners held each of the properties for investment and that petitioner was not in the trade or business of a real estate dealer.  Therefore, the rental losses for the years at issue cannot be used to offset petitioner's self-employment income.  We sustain respondent on this issue.

Respondent determined that petitioners are liable for additions to tax under section 6651 for the taxable years 1991 and 1992.  Section 6651(a)(1) imposes an addition to tax for failure to file a tax return timely.  The addition to tax is equal to 5 percent of the amount of the tax required to be shown on the return if the failure to file is not more than 1 month. Sec. 6651(a)(1).  An additional 5 percent is imposed for each month or fraction thereof in which the failure to file continues,

to a maximum of 25 percent of the tax.  <u>Id.</u>  The addition to tax is applicable unless petitioners establish that the failure to file was due to reasonable cause and not willful neglect.  <u>Id.</u> Petitioners bear the burden of establishing that they are not liable for these additions to tax.  Rule 142(a).

Petitioners filed their 1991 Federal tax return on September 21, 1992, 36 days after the filing deadline under the automatic extension.  Petitioners filed their 1992 tax return on February 24, 1994, 4 months and 9 days after the filing deadline as extended.  Petitioners have not established that their late filings were due to reasonable cause.  Accordingly, we sustain respondent on this issue.

<u>Decision will be entered</u>

<u>under Rule 155</u>.