T.C. Memo. 1998-334


UNITED STATES TAX COURT


RICHARD L. MATZ AND LINDA A. MATZ, DECEASED, RICHARD LEE MATZ,
JR., INDEPENDENT EXECUTOR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17820-95.              Filed September 22, 1998.


<u>Michael L. Cook</u>, <u>Patrick L. O'Daniel</u>, <u>Bryan W. Lee</u>, and

<u>William R. Leighton</u>, for petitioners.

<u>Elizabeth A. Owen</u>, and <u>T. Richard Sealy III</u>, for respondent.


MEMORANDUM OPINION


PARR, <u>Judge</u>:  Respondent determined deficiencies in

petitioners' Federal income tax for taxable years 1983, 1984,

1985, and 1986 in the amounts of $3,124, $258,369, $11,537, and

$653,673, respectively.

All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. References to petitioner are to Richard L. Matz.

After concessions,[1] the issues for decision are: (1) Whether for 1985 a $325,000 loss petitioners sustained relating to Southern Express, a failed startup airline, is ordinary or capital. This turns on whether petitioner was engaged in a trade or business. We hold petitioner was not engaged in a trade or business, and that the loss is a capital loss. (2) Whether for 1986 a $703,659 loss petitioners sustained relating to the Bridgepoint project (Bridgepoint) is ordinary or capital, and whether petitioners' interest expense incurred in 1986 in the amount of $285,142 relating to Bridgepoint is investment interest. This turns on whether petitioner was engaged in a trade or business. We hold petitioner was not engaged in a trade or business, that the loss is a capital loss, and that the interest is investment interest. (3) Whether for 1987 losses petitioners sustained relating to parcels of real property known

---

[1] Both parties made concessions subsequent to the issuance of the notice of deficiency. We note that petitioners argue on brief that their alternative minimum tax net operating loss carryback from 1987 to 1984, 1985, and 1986 should be increased by passive activity losses. Respondent conceded this before trial.

as McCandless, Killingsworth, Webb, and Bordelon (sometimes collectively referred to as the 1987 properties) in the amounts of $90,626, $179,765, $72,069 and $689,703, respectively, are ordinary or capital. This turns on whether petitioner was engaged in a trade or business. We hold petitioner was not engaged in a trade or business and that the losses are capital. (4) Whether for 1987 a $59,492 loss petitioners sustained relating to the Saddle Mountain mineral interest (Saddle Mountain) is ordinary or capital. We hold it is ordinary. (5) Whether for 1989 a $1,643,900 loss petitioners sustained relating to a parcel of real property known as Hidden Valley is ordinary or capital. This turns on whether petitioner was engaged in a trade or business. We hold petitioner was not engaged in a trade or business and that the loss is capital.

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated herein by this reference. At the time the petition in this case was filed, petitioners resided in Austin, Texas.

For convenience, we combine our findings of fact with our opinion under each separate issue heading.[2]

---

[2] We have considered each of the parties' arguments and, to the extent that they are not discussed herein, find them to be unconvincing.

Issue 1.  Southern Express

Respondent determined that the $325,000 loss petitioners sustained with respect to Southern Express in 1985 is from the worthlessness of a nonbusiness debt, producing a short-term capital loss. Petitioners assert that it is an ordinary loss.

Southern Express was incorporated on May 8, 1984, for the purpose of operating a commuter airline within Texas.  Scot Spencer (Spencer) was the registered agent for Southern Express. Spencer was well versed in airline terminology and encouraged petitioner's involvement with Southern Express.  Petitioner had no previous experience in the airline business but agreed to fund some of the startup expenses and to locate other investors.

After a short time, petitioner realized that Spencer had made inaccurate and possibly even fraudulent representations regarding Southern Express.  Upon this realization, petitioner requested that Spencer return the money he had invested.  On November 7, 1984, Spencer, on behalf of Southern Express, executed a note to petitioner promising to pay petitioner $325,000 over a 2-year period.  Spencer failed to make any payments on the note.  Consequently, petitioners sustained a loss of $325,000.

On their 1985 Federal income tax return, petitioners reported the $325,000 loss as ordinary.  Respondent determined that the loss is a capital loss and is therefore limited under

sections 165(c) and (f) and 166(d)(1) and (2). Petitioners assert that the loss related to Southern Express was incurred and proximately related to petitioner's trade or business of promoting, developing, organizing, and financing startup businesses, and is thus ordinary under section 165(a) and (c)(1) or, in the alternative, a business bad debt under section 166(a).

Section 165(a) provides, "There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." In the case of an individual, the deduction under section 165(a) is limited to certain circumstances, including losses incurred in a trade or business. Sec. 165(c)(1). Petitioner asserts that he is engaged in a trade or business of promoting, developing, organizing, and financing startup businesses. We disagree.

To be engaged in a trade or business, an individual must be involved in an activity with continuity and regularity, and the primary purpose for engaging in the activity must be for income or profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). A sporadic activity, a hobby, or an amusement diversion does not qualify. Id. Whether an individual is carrying on a trade or business requires an examination of the facts involved in each case. Higgins v. Commissioner, 312 U.S. 212, 217 (1941). Petitioner bears the burden of proving that he was engaged in a

trade or business regarding Southern Express.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

The separate trade or business of promoting, developing, organizing, and financing startup businesses does exist for purposes of sections 165 and 166.  See <u>Deely v. Commissioner</u>, 73 T.C. 1081, 1092-1093 (1980), supplemented by T.C. Memo. 1981-229; <u>Newman v. Commissioner</u>, T.C. Memo. 1989-63; <u>Farrar v. Commissioner</u>, T.C. Memo. 1988-385.  The difficulty lies in differentiating between investment activity and the trade or business of promoting.  <u>Newman v. Commissioner</u>, <u>supra</u>.

On the basis of all the facts and circumstances, we hold that petitioner did not pursue promoting, developing, organizing, and financing startup businesses with the continuity and regularity to qualify as being engaged in a trade or business.  Cf. <u>Newman v. Commissioner</u>, <u>supra</u>; <u>Farrar v. Commissioner</u>, <u>supra</u>. Petitioner's primary trade or business was as a real estate broker.  There is nothing, however, which prohibits a taxpayer from pursuing more than one trade or business.  See <u>Commissioner v. Groetzinger</u>, <u>supra</u> at 35; <u>Curphey v. Commissioner</u>, 73 T.C. 766, 775-776 (1980).  In addition to his real estate activities, petitioner was involved in 6 startup businesses, including Southern Express, from the 1960's through the late 1980's.  This sporadic activity cannot qualify as being engaged in a trade or business.

Accordingly, petitioners' loss is not allowed pursuant to section 165(c)(1). In the alternative, since petitioner was not engaged in a trade or business, the loss is not allowed as a bad debt pursuant to section 166(a). The loss is, however, a nonbusiness bad debt pursuant to section 166(d). As such, it is treated as a short-term capital loss. Secs. 166(d), 1222.

Issue 2. Bridgepoint

Respondent determined that the $703,659 loss petitioners sustained with respect to Bridgepoint in 1986 is a capital loss and that $285,142 of interest petitioner paid in 1986 relating to Bridgepoint is investment interest. Petitioners assert that the loss is ordinary and that the interest is business interest.

On October 29, 1984, petitioner and Wayne H. Lott, Sr. (Lott) each acquired a 50-percent interest in Bridgepoint,[3] taking title in the name of Wayne H. Lott, Sr., Trustee. On July 10, 1985, petitioner sold his interest to Lott for $1,250,000 on an installment basis.

Lott thereafter entered into an agreement with an unrelated partnership (the partnership), whereby the partnership would purchase Bridgepoint and hire Lott to construct an office building on the property. The partnership attempted, but was

_____

[3]    The parcel of land was officially known as "Lot 2, Hidden Valley, Phase B, Tract 4"; however, the parties refer to the land and a corresponding plan to construct an office building there as the Bridgepoint Project or Bridgepoint Venture.

unable to obtain, a loan from CreditBanc for the purchase of Bridgepoint and to construct the office building. In order to facilitate the sale of Bridgepoint and the construction of the office building, petitioner borrowed $1,500,000 from Continental Savings Association (Continental Savings), invested the money in certificates of deposit issued by CreditBanc, and pledged the certificates of deposit to CreditBanc to secure the partnership's loan.

The partnership agreed to reimburse petitioner for the certificates of deposit within 14 months, plus the difference between the interest expense petitioner incurred at Continental Savings and the interest income petitioner received on the certificates of deposit. In addition, the partnership agreed that petitioner would have a net profits interest in the Bridgepoint project, and that petitioner was not a partner or joint venturer with the partnership.

The partnership failed to perform pursuant to this agreement and, in 1986, CreditBanc foreclosed on Bridgepoint and the office building. As a result, petitioner sustained a $703,659 loss. During 1986, petitioner paid $285,142 in interest on his loan from Continental Savings.

On their 1986 Federal income tax return, petitioners reported the $703,659 as an ordinary loss. Petitioners also reported the interest as a deductible mortgage interest expense.

Respondent determined that the loss is a long-term capital loss and that the interest paid is investment interest. We agree with respondent.

Petitioners assert that they are entitled to ordinary loss treatment because petitioner was a coventurer in the Bridgepoint project, and that petitioner was in the trade or business of developing and promoting businesses. Petitioners argue that petitioner's involvement in the Bridgepoint project was pursuant to this trade or business. We have already rejected this argument in our discussion of petitioners' loss regarding Southern Express, and we incorporate our analysis on that issue here.[4]

Accordingly, we find that the $703,659 loss petitioners sustained with respect to Bridgepoint in 1986 is a capital loss and that $285,142 of interest petitioner paid in 1986 relating to Bridgepoint is investment interest.

---

[4] Although petitioners state on brief that "The Bridgeport [sic] Building transaction was not a direct investment in real property but a specially designed structure of financing for a build to suit office building" and "[Petitioner] entered into the Bridgepoint venture as part of his trade or business of developing and promoting businesses", petitioners also analogize the instant facts to S & H, Inc. v. Commissioner, 78 T.C. 234 (1982). In S & H, Inc. v. Commissioner, supra, the Court held that a transaction was a sale of property in the ordinary course of a taxpayer's trade or business and the gain thereon was taxable as ordinary income rather than capital gain. Petitioner did not own, and therefore did not sell, Bridgepoint. We fail to see any reasonable analogy between the Bridgepoint facts and the facts and holding of S & H, Inc. v. Commissioner, supra.

Issue 3.  1987 Properties

Respondent determined that the losses petitioners sustained in 1987 for the McCandless, Killingsworth, Webb, and Bordelon properties in the amounts of $90,626, $179,765, $72,069 and $689,703, respectively, were long-term capital losses. Petitioners assert that these amounts are ordinary losses.[5]

During 1984, petitioner acquired his interest in each of the 1987 properties.  Each of these properties was located in the area surrounding Austin, Texas.  Each of these properties was foreclosed in 1987.

Petitioners reported the losses sustained on each of the 1987 properties as ordinary on their 1987 Federal income tax return.  Respondent determined that these losses were capital losses because the 1987 properties were not held by petitioner for sale to customers in the ordinary course of a trade or business.  Petitioners assert that petitioner was in the trade or business of acquiring, developing, and selling real estate for profit, and that each of these properties was held by petitioner for sale to customers in the ordinary course of this trade or business.  We agree with respondent.

---

[5]     In addition, petitioners sustained a loss of $36,274 in 1987 on a parcel of real property known as 3-Corners Ranch. Petitioners concede that the loss incurred on 3-Corners Ranch is a capital loss.

There is no dispute that petitioner was actively involved in a trade or business as a real estate broker.  Petitioner has worked as a real estate broker since approximately 1960.  It is possible for a taxpayer to be a real estate broker and operate a second business involving buying and selling real estate for his own account.  See Tomlinson v. Dwelle, 318 F.2d 60, 61-62 (5th Cir. 1963).  For the reasons discussed below, we find that petitioner was not engaged in a second trade or business of acquiring, developing, and selling real estate for profit.

The Court of Appeals for the Fifth Circuit, to which this case is appealable, "has developed a framework to be used in determining whether sales of land are considered sales of a capital asset or sales of property held primarily for sale to customers in the ordinary course of a taxpayer's business." Bramblett v. Commissioner, 960 F.2d 526, 530 (5th Cir. 1992), revg. T.C. Memo. 1990-296; Suburban Realty Co. v. United States, 615 F.2d 171 (5th Cir. 1980); Biedenharn Realty Co. v. United States, 526 F.2d 409 (5th Cir. 1976); United States v. Winthrop, 417 F.2d 905 (5th Cir. 1969).  The Court of Appeals has directed that three principal questions must be considered:

> (1) Was the taxpayer engaged in a trade or business, and if so, what business?
> (2) Was the taxpayer holding the property primarily for sale in that business?
> (3) Were the sales contemplated by the taxpayer "ordinary" in the course of that business?  [Bramblett v. Commissioner, supra at 530.]

See also Suburban Realty Co. v. United States, supra at 178.

In answering these questions, the Court of Appeals has instructed that seven factors should be considered: (1) the nature and purpose of the acquisition of the property and the duration of the ownership; (2) the extent and nature of the taxpayer's efforts to sell the property; (3) the number, extent, continuity and substantiality of the sales; (4) the extent of subdividing, developing, and advertising to increase sales; (5) the use of a business office for the sale of the property; (6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; and (7) the time and effort the taxpayer habitually devoted to the sales. Bramblett v. Commissioner, supra at 530-531; Suburban Realty Co. v. United States, supra at 178; Biedenharn Realty Co. v. United States, supra at 415; United States v. Winthrop, supra at 910. The frequency and substantiality of sales is the most important factor. Bramblett v. Commissioner, supra at 531; Suburban Realty Co. v. United States, supra at 178; Biedenharn Realty Co. v. United States, supra at 416. This is so because

> A taxpayer who engages in frequent and substantial sales is almost inevitably engaged in the real estate business. The frequency and substantiality of sales are highly probative on the issue of holding purpose because the presence of frequent sales ordinarily belies the contention that property is being held "for investment" rather than "for sale." And the frequency of sales may often be a key factor in determining the "ordinariness" question. [Suburban Realty Co. v. United States, supra at 178.]

Each of the remaining factors have varying degrees of relevancy depending on the particular factual situation, and all may not be applicable to any given case. Suburban Realty Co. v. United States, supra at 178-180; Morley v. Commissioner, 87 T.C. 1206, 1213 (1986); S & H, Inc. v. Commissioner, 78 T.C. 234, 243-244 (1982).

We must now apply the analysis set forth above to the facts and circumstances of the instant case. We must decide whether petitioner was engaged in a trade or business and, if necessary, whether petitioner was holding the properties at issue primarily for sale in that trade or business and whether petitioner's contemplated sales were "ordinary" in the course of that trade or business.

Petitioner must engage in a sufficient amount of activity to be considered engaged in a trade or business; however, "The precise quantum necessary will be difficult to establish, and cases close to the line on this issue will arise." Suburban Realty Co. v. United States, supra at 181. We are mindful that the most important factor to consider regarding this issue, as stated by the Court of Appeals, is the frequency and substantiality of sales. Bramblett v. Commissioner, supra at 531; Suburban Realty Co. v. United States, supra at 178; Biedenharn Realty Co. v. United States, supra at 416. On the basis of all the facts and circumstances, we find that

petitioner's ventures did not reach the requisite level of activity, as interpreted by the Court of Appeals for the Fifth Circuit, to be considered engaged in a trade or business.  Cf. Suburban Realty Co. v. United States, supra at 174 (taxpayer made 244 sales over a 32-year period); Biedenharn Realty Co. v. United States, supra at 411-412 (taxpayer sold 208 lots and 12 individual parcels from subdivision in question over 31-year period); United States v. Winthrop, supra at 907 (taxpayer sold 456 lots over a 19-year period).

Petitioner testified that since he went into real estate, in approximately 1960, he had bought and sold approximately 45 unimproved properties and 18[6] improved properties.  Petitioners assert that this supports the proposition that petitioner had frequent and substantial sales of real property over his entire business career.  We disagree.

Petitioners attached to their brief three appendices listing the above referenced unimproved and improved properties. Respondent attached to the reply brief petitioners' answers to respondent's interrogatories in order to refute the appendices. Statements in briefs, however, do not constitute evidence and cannot be used as such to supplement the record.  Rule 143(b); Niedringhaus v. Commissioner, 99 T.C. 202, 214 n.7 (1992).  After

---

[6]    We note that two of these 18, about which petitioner testified, are not improved properties, but failed startup businesses.

examining several of petitioners' returns, however, which were admitted in evidence, we find that many of the parcels of real property which petitioners owned were reported as capital gains upon their disposition. Therefore, although petitioners have bought and sold various parcels of real property over the years, many parcels were treated as investment properties. Furthermore, petitioner was involved in an investment called the MMJ Ventures, which also held certain properties for investment. This does not support the proposition that petitioners were engaged in a trade or business. Cf. Legg v. Commissioner, 57 T.C. 164, 169 (1971), affd. per curiam 496 F.2d 1179 (9th Cir. 1974).

Petitioners rely on Morley v. Commissioner, supra, where the Court held that a single transaction for the sale of a piece of real property qualified as a trade or business. See also S & H, Inc. v. Commissioner, supra. The Court stated that in certain situations this rationale may apply if "at the time the property was acquired by the taxpayer, he intended promptly to resell the property and the objective facts show that he proceeded to attempt to implement that intent--in short, that the taxpayer's purpose was bona fide." Morley v. Commissioner, supra at 1211.

Petitioner testified that the real estate market in the Austin, Texas, area during the early 1980s was very active and that "'investors' * * * plus the local types, were all looking for land that could be a quick profit or a quick development".

Petitioner further testified that he attempted to quickly resell certain properties by, on the day of closing, putting up a sign and contacting other people to buy it. We accept that the Austin, Texas, real estate market was very active at that time, and that petitioner purchased certain properties with the intent to resell them immediately. We further accept that petitioner's intention to resell was thwarted by a sudden and dramatic downward turn in the real estate market. This, however, does not change our analysis, in light of the guidance provided by the Court of Appeals for the Fifth Circuit, that this record of frequency and substantiality does not rise to the necessary level to reach the conclusion that petitioner was engaged in a trade or business. See Bramblett v. Commissioner, 960 F.2d at 531.

On the basis of our reasoning above, we need not reach the remaining two questions which the Court of Appeals directs us to consider. Accordingly, since petitioners were not engaged in a trade or business, the losses sustained on the 1987 properties were long-term capital losses.

Issue 4. Saddle Mountain Mineral Interest

Respondent determined that the $59,492 loss petitioners sustained with respect to Saddle Mountain in 1987 is a long-term capital loss. Petitioners assert that it is an ordinary loss.

On July 3, 1984, petitioner acquired Saddle Mountain, which was located in Grant County, Washington. At that time, the Shell

Oil Company (Shell) was drilling an oil well in the area. Petitioner purchased Saddle Mountain on speculation related to the drilling of the Shell oil well.

After the oil well was drilled and tested, Shell plugged and abandoned it as a dry hole. In 1987, petitioner abandoned Saddle Mountain as worthless but did not dispose of title to the mineral interest.

Losses from sales or exchanges of capital assets are allowed only to the extent allowed in sections 1211 and 1212. Sec. 165(f). A "capital asset" is defined as property held by the taxpayer (whether or not connected with his trade or business), subject to certain enumerated exceptions. Sec. 1221.

There must be a "sale or exchange" of a capital asset in order for the transaction to be taxed as a capital gain or loss. Sec. 165(f). Our analysis, therefore, is not directed at whether petitioner was in a trade or business with respect to Saddle Mountain, but whether there was a "sale or exchange".

As the Court stated in La Rue v. Commissioner, 90 T.C. 465, 483 (1988), "The touchstone for sale or exchange treatment is consideration." Therefore, if property merely becomes worthless, the loss does not arise from a sale or exchange within the meaning of section 1211, and is thus ordinary in character. Furthermore, if a taxpayer abandons worthless property, the abandonment does not constitute a sale or exchange within the

meaning of section 1211, and the loss is ordinary.[7]  See <u>Citron v. Commissioner</u>, 97 T.C. 200, 213-217 (1991).

Petitioners merely abandoned a worthless mineral interest. The loss, therefore, did not arise from a "sale or exchange" within the meaning of section 1211.  Accordingly, petitioners are entitled to ordinary loss treatment with respect to the abandonment of Saddle Mountain during 1987.

<u>Issue 5.  Hidden Valley</u>

Respondent determined that the $1,643,900 loss petitioners sustained in 1989 relating to Hidden Valley is a long-term capital loss.  Petitioners assert that it is an ordinary loss.

In October 1984, petitioner purchased Hidden Valley. Petitioner testified that he intended to construct an office building on this property.  On January 3, 1989, petitioner surrendered, disposed of, or lost his interest in Hidden Valley through foreclosure.

In support of their argument that the loss sustained on Hidden Valley in 1989 is ordinary, petitioners again assert that petitioner was engaged in a trade or business of acquiring, developing, and selling real property and that Hidden Valley was

---

[7]     We recognize that, under certain circumstances, the abandonment of mortgaged property can qualify as a "sale or exchange".  See, e.g., <u>Yarbro v. Commissioner</u>, 737 F.2d 479 (5th Cir. 1984), affg. T.C. Memo. 1982-675; <u>Middleton v. Commissioner</u>, 77 T.C. 310 (1981), affd. per curiam 693 F.2d 124 (11th Cir. 1982).  These conditions do not exist in the instant case.

held for sale in the ordinary course of that trade or business, or that petitioner was engaged in a trade or business of developing and promoting businesses and that Hidden Valley was held pursuant to that trade or business.  We have already rejected these arguments and do not need to address them again in detail.

Accordingly, the $1,643,900 loss petitioners sustained in 1989 relating to Hidden Valley is a long-term capital loss.[8]

For the foregoing reasons,

<u>Decision will be entered under Rule 155.</u>

---

[8]     Furthermore, in claiming the Hidden Valley loss as ordinary on their 1989 Federal income tax return, petitioners assert that there is a resulting net operating loss.  Petitioners assert that this net operating loss should be carried back to 1986, 1987, and 1988, and applied against the deficiencies determined by respondent.  Since we have held that the Hidden Valley loss is capital, we do not reach this issue.